**UNITED STATES of America,
Appellee,**

v.

**James Henry ROLLINS, a/k/a "Lee Evans", Appellant.**

No. 1082, Docket 74–2610.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1975.

Decided Sept. 15, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1122.

E. Thomas Boyle, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Richard Wile, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., on the brief, Lawrence S. Feld, Asst. U. S. Atty., of counsel), for appellee.

Before CLARK, Associate Justice,* and HAYS and MANSFIELD, Circuit Judges.

HAYS, Circuit Judge:

James Henry Rollins appeals from a judgment of conviction on two counts of mail fraud in violation of 18 U.S.C. § 1341 [1] which was entered in the United States District Court for the Southern District of New York after a jury trial. Rollins' principal claims on appeal are that the district court erroneously admitted into evidence (1) two passports seized pursuant to a search warrant by the Oakland, California Police Department in 1971 and (2) certain items taken from Rollins' person in connection with his 1974 arrest on the mail fraud charges. We affirm the judgment of the district court.

I.

On August 10, 1973, Rollins, claiming to be "Robert Cody," opened a checking account in the name of "Kodi's Domestic & International Enterprises" at the Avenue B branch of Manufacturers Hanover Trust Company in New York City. In

* United States Supreme Court (Retired), sitting by designation.

1. After the jury returned guilty verdicts on Counts One and Two of the indictment, the Government consented to a mistrial on Count Three which charged appellant with using a false name to promote mail fraud in violation of 18 U.S.C. § 1342. Count Four which charged appellant with entering a bank with intent to commit larceny in violation of 18 U.S.C. § 2113(a) was dismissed on the ground that, as a matter of law, this section was not intended to encompass an entry into a bank with the intent to perpetrate mail fraud.

late August or early September, 1974, Joseph Portale, the officer-in-charge of the Avenue B branch, received two mail transfer money orders in air mail envelopes bearing Nairobi, Kenya postmarks. The two mail transfer forms, which were soon discovered to have been forged, purported to be directions from the Kenyatta Avenue branch of the Standard Bank, Ltd., in Nairobi, Kenya, to the Avenue B branch of Manufacturers Hanover instructing the latter to deposit $301,097.48 and $352,165.03, respectively, into the account of "Kodi's Domestic & International Enterprises." The two transfer forms listed as drawer the "Wheat Marketing Board," an entity for which there was no listing in the Kenya Post Office Directory.

Portale referred the mail transfer forms to the International Department of Manufacturers Hanover's main office where they were handled by Joseph Meehan, Assistant Vice-President in charge of special services and security for the International Department. Upon receiving the first mail transfer form on September 3, 1974, Meehan verified appellant's account at the Avenue B branch and called the telephone number he had obtained from the bank's account records. He spoke with a person identifying himself as Robert Cody who confirmed that he was expecting a transfer of a substantial sum arising from wheat transactions in Kenya.

Telephone company records indicate that on September 4, 1974, a telephone call was made to Kenya from the number listed to Cody on the bank records.

On September 4, 5, and 6, 1974, Cody telephoned Meehan to inquire whether the funds were yet available. When the September 6 phone call from Cody was received, Meehan was meeting with Postal Inspector John Slavinski. Slavinski listened to the call and instructed Meehan to tell appellant that the money

would be available the following Monday morning, September 9, at the Avenue B branch. At the Avenue B branch on September 9, Roseanne Santaromita, the Operations Supervisor who had opened the "Kodi's Domestic & International Enterprises" checking account, asked appellant if he was Robert Cody and if he was there to pick up a substantial sum of money which had been forwarded from Nairobi, Kenya, in connection with the sale of wheat. Upon appellant's affirmative response to these inquiries, Agent Slavinski, who was seated at a nearby desk listening, placed appellant under arrest.

When arrested, Rollins had in his possession a slip of paper containing Meehan's name and telephone number at the bank and a personal address book containing a listing for a "Mr. Zini, P.O. Box 48976, N.K. 556101." At arraignment, appellant asked Agent Slavinski to return the address book, and, in Slavinski's presence, instructed his wife to contact "Zini" and advise him of what had happened. However, the Post Office Directory for Kenya,[2] introduced at trial in conjunction with the testimony of Giles Noronha, an officer of the Kenyatta Avenue branch of Standard Bank, Ltd., disclosed that P.O. Box 48976, the number which appeared in appellant's address book opposite the name "Mr. Zini," was rented by Walter Donald Obado Ooko, a former employee of the Kenyatta Avenue branch who had been discharged by that bank in 1973.

In order to establish further that Rollins had actively participated with Obado Ooko in a scheme to defraud the bank, the Government sought to introduce into evidence two passports bearing Rollins' photograph. One of the passports was issued to James Henry Rollins; the second was issued to "Lynwood Joseph Evans" and contained travel stamps indicating that its bearer had been in Kenya

---

2. There is no home delivery of mail in Kenya. Consequently, in order to receive mail in Kenya a person must rent a post office box. Because mail must be addressed to a person's post office box, the Kenyan postal authorities publish the Post Office Directory which, like a telephone directory, is distributed to every organization and post office box renter in Kenya. The Post Office Directory is relied upon by the entire public in Kenya in order to send mail.

during July and August, 1971.[3] The two passports in question had been seized from appellant's apartment in Oakland, California in 1971 during the execution of a search warrant issued in connection with an unrelated matter, a California shooting. Prior to trial, appellant moved to suppress the passports on the ground that the affidavit in support of the 1971 search warrant had not established probable cause for the issuance of the warrant. Appellant's motion was denied.

Appellant further moved to suppress all evidence flowing from his arrest on September 9, 1974, claiming that the arrest was invalid because of the failure of the Government to obtain an arrest warrant before his seizure. This motion was similarly denied. The case went to trial and appellant was found guilty on two counts of mail fraud.

## II.

We consider first Rollins' claim that the admission into evidence of the two passports seized by the Oakland, California Police Department in 1971 pursuant to a search warrant was error. In support of this claim, appellant argues that the affidavit in support of the search warrant did not establish probable cause for the issuance of the warrant, that the seizure of the passports exceeded the scope of the warrant, and that the Government did not produce signed copies of the warrant and supporting affidavit. We find none of these arguments persuasive.

Rollins contends first that the California warrant, obtained on the basis of the supporting affidavit of Police Sergeant Conrad Blevins, which is reprinted in the margin,[4] was issued without probable

---

**3.** In 1971 Rollins was living in California under the name of "Lee Evans." In the opinion of Thomas Donovan, a handwriting expert employed at the Postal Inspection Service Laboratory in Washington, D. C., the applications submitted to the State Department for the issuance of the two passports were both written by Rollins, who had provided handwriting exemplars on October 11, 1974.

**4.** The affidavit of Conrad Blevins reads as follows:

That the said articles, items and property are described particularly as follows, to wit: 9 mm. pistol and ammunition therefore

That the following facts establish the existence of grounds for the issuance of a Search Warrant and further establish probable cause for believing that said grounds exist:

Affiant is a Sergeant of Police attached to the Homicide Section of the Criminal Investigation Division of the Oakland Police Department and is engaged in the apprehension of persons responsible for homicides.

On the afternoon of September 23, 1971, Affiant was advised of a double shooting at 1255 99th Avenue in the office of the Garden Manor Square Apartments and that Isaac Lewis and Isaac Green were the victims.

Affiant thereupon went to said address and personally observed the two mentioned victims lying on the floor of the office in a pool of blood and observed eight 9 mm. empty shell casings littering the floor of the office. A 9 mm. pistol was not found at the scene.

Both victims were dead. In the course of his investigation, Affiant spoke with Ronald

Williams of 720 Weld Street in the City of Oakland who stated to Affiant that he had been in the vicinity of the office aforementioned and had heard a series of shots coming from the direction of the office and had then observed Lee J. Evans who was personally known to him run from the office carrying a brief case and disappeared from his view in the direction of an apartment which he knows Lee J. Evans to live in located on 99th Avenue Court.

Affiant further was advised by the Pacific Telephone and Telegraph Company that the phone Number 569–2219 is leased to a Lee J. Evans at 9917 99th Avenue Court.

On September 24, 1971, Affiant personally spoke with Willie Hale of 9923 99th Avenue Court who told Affiant that he knows that Lee J. Evans lives at 9917 99th Avenue Court in the City of Oakland with a girl-friend by the name of Deborah Miles. Said Willie Hale further told Affiant that he works as a maintenance man at Garden Manor Square Apartments and knows that Deborah Miles rents said apartment at 9917 99th Avenue Court in the City of Oakland.

Affiant is further advised and believes from his own experience that 9 mm. pistols are easily disposed of and therefore requests a nighttime execution of the warrant.

WHEREFORE, affiant prays that a Search Warrant issue commanding that an immediate search be made of the person(s) of the said *Lee J. Evans* and the premises and buildings described herein for the articles, items and property above described and that the same be brought before a magistrate and disposed of according to law.

cause. Specifically, Rollins asserts that the standards enunciated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining the sufficiency of a warrant application which relies upon an informant's statement are not met here. We do not agree.

■ When an affiant seeking a search warrant relies on hearsay, he must, pursuant to *Aguilar* and *Spinelli,* supra, set forth in the warrant application "some of the underlying circumstances," from which the informant drew his conclusions concerning the suspect's criminal activities and disclose some of the reasons which gave assurance of the informant's reliability. The requirement that the basis of the informant's belief be shown is clearly met here by the statement of Williams, the informant, that his information was based upon his personal observation of "Evans" running from the office from which the shots had issued towards an apartment in which he knew "Evans" to live. Both the Supreme Court, *Spinelli v. United States,* supra, 393 U.S. at 416, 89 S.Ct. 584, and this court, *United States v. Viggiano,* 433 F.2d 716, 719 (2d Cir. 1970), cert. denied, 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971), have recognized personal observation as a reliable basis for an informant's report.

■ Appellant argues that the affidavit, in that it does not contain a recital that Williams was known to the affiant as a reliable informant, fails to meet the second requirement of *Aguilar* that there be some showing of the trustworthiness of the informant himself. This argument is without merit. We have previously recognized that the language in *Aguilar* and *Spinelli* was addressed to the problem of professional informers, *United States v. Burke,* 517 F.2d 377, 380 (2d Cir., 1975). In this case, Williams was not an anonymous paid informer, but an identified bystander with no apparent motive to falsify. The report of such a person has a "peculiar likelihood of accuracy" and is

> "*toto coelo* removed from a 'meager report' that 'could easily have been obtained from an offhand remark heard at a neighborhood bar', as to which prior history of providing accurate information is required, *Spinelli v. United States,* 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969)."

*United States v. Miley,* 513 F.2d 1191, 1204 (2d Cir. 1975). Moreover, the imposition of a requirement of proof of prior reliability with respect to informants such as Williams,

> "would mean that, despite the 1972 amendment to F.R.Crim.P. 41(c) to the effect that '[t]he finding of probable cause may be based upon hearsay evidence in whole or in part,' it would generally be impossible to use hearsay statements of victims or witnesses since ordinarily they would not be previously known to the police."

*United States v. Burke,* supra, at 380. Specific allegations of reliability or past reliable contact are not required when the informant in question was an eyewitness to the crime. *United States v. Burke,* supra, at 380; *Cundiff v. United States,* 501 F.2d 188, 189–90 (8th Cir. 1974); *United States v. McCoy,* 478 F.2d 176, 179 (10th Cir.), cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973); *United States v. Bell,* 457 F.2d 1231, 1238–39 (5th Cir. 1972); *McCreary v. Sigler,* 406 F.2d 1264, 1269 (8th Cir.), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969). See *United States v. Miley,* supra, 513 F.2d at 1204; *United States v. Mahler,* 442 F.2d 1172, 1174–75 (9th Cir.), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971).

■ Even if Williams *were* an unnamed paid informant, the requirement that his reliability be shown would be met here. In such cases, we have not *required* a recitation that an informant shall have previously supplied accurate information, but have merely held that such a recitation would be sufficient to justify reliance on the informant's story.

United States v. Sultan, 463 F.2d 1066, 1068–69 (2d Cir. 1972); United States v. Bozza, 365 F.2d 206, 225 (2d Cir. 1966); see United States v. Harris, 403 U.S. 573, 581–82, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Viggiano, supra, 433 F.2d at 719; cf. United States v. Canieso, 470 F.2d 1224, 1231 (2d Cir. 1972). "Such a recital . . . is only one way of validating hearsay used to obtain a search warrant—not a ritual that must be invariably observed even when the circumstances render it inappropriate." United States v. Bozza, supra, 365 F.2d at 225. The principle to be applied is that the magistrate must have a " 'substantial basis' for crediting the hearsay." United States v. Harris, supra, 403 U.S. at 581, 91 S.Ct. at 2081. See also Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Burke, supra at 381; United States v. Sultan, supra, 463 F.2d at 1069; United States v. Bozza, supra, 365 F.2d at 225. In this case, Williams' information was based upon his personal observation and furnished adequate detail to meet this criterion. Moreover, the information provided by Williams was amply corroborated. His statement that he heard shots coming from the direction of the office of the Garden Manor Square Apartments was corroborated by Officer Blevin's personal observations of the bodies of the victims and of eight empty 9 mm. shell casings in that office. Williams' statement that he knew "Lee J. Evans" and that Evans lived in an apartment on 99th Avenue Court was corroborated by the telephone company's verification of Evan's listing at the address to be searched. We reject appellant's contention that corroboration must directly link the suspect to the commission of the crime.

> "An untested informant's story may be corroborated by other facts that become known to the affiant, even if they corroborate only innocent aspects of the story."

United States v. Sultan, supra, 463 F.2d at 1069. See United States v. Dzialak, 441 F.2d 212, 216 (2d Cir.), cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971); United States v. Viggiano, supra, 433 F.2d at 716. We conclude that the district court properly held that there was probable cause for the issuance of the California search warrant.

Rollins next claims that the seizure of the passports was beyond the scope of the search authorized by the warrant. This claim was first raised in appellant's post-trial motion dated December 11, 1974, and was clearly waived by his failure to move for suppression on this ground prior to trial.

A motion to suppress evidence pursuant to Rule 41(f) or its predecessor Rule 41(e), of the Federal Rules of Criminal Procedure must be made before trial unless its delay is justified. United States v. Mauro, 507 F.2d 802, 805–07 (2d Cir. 1974), cert. denied, 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1975); United States v. Ellis, 461 F.2d 962, 969 (2d Cir.), cert. denied, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972); United States v. Blackwood, 456 F.2d 526, 529 (2d Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969), cert. denied, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1970); United States v. Weldon, 384 F.2d 772, 775 (2d Cir. 1967). Similarly, the failure to assert before trial a particular ground for a motion to suppress certain evidence operates as a waiver of the right to challenge the admissibility of the evidence on that ground. Cf. United States v. Sisca, 503 F.2d 1337, 1346–49 (2d Cir.), cert. denied, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). It is clear that Rollins' failure to move to suppress the passports prior to trial on the ground that their seizure was not within the scope of the warrant was not justifiable. He had ample opportunity to present this claim in a timely manner. The Government's intention to offer the passports into evidence was disclosed during informal pre-trial discovery, and, although Rollins appeared pro se, he had the assistance and advice of experienced counsel during both discovery and trial,

and actually made a suppression motion involving the same evidence on the separate ground of lack of probable cause. A specific objection on the ground now asserted, made in timely fashion, would have enabled the district court to hold a hearing as to circumstances of the search. In the event of an adverse ruling the Government would have had the opportunity to alter its conduct of the case, and refrain from relying on the passports. While the passports seized in California were useful in establishing Rollins' identity and contacts in Kenya, it seems entirely probable that the Government could have secured a conviction without the challenged evidence. Rollins' identity was established otherwise by eyewitness identification and fingerprints. Rollins' direct contacts in Kenya were also proven by the names and addresses of his personal address book, by the toll statement disclosing a call from Rollins' telephone to Kenya on September 4, 1974, and by the fact that the transfer forms from Kenya contained the name and number of Rollins' checking account. By his failure to advance his objection in timely fashion, Rollins deprived the Government of the opportunity to meet that objection before trial; he cannot advance it now.

■ Even if Rollins had not waived his claim, the seizure of the passports was justified under the "plain view" doctrine by which incriminating evidence inadvertently discovered during a search made pursuant to an initial lawful intrusion is subject to seizure. *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). Seizure of mere evidence, as

well as instrumentalities or contraband, is justified. *Coolidge v. New Hampshire,* supra, 403 U.S. at 464, 91 S.Ct. 2022; *United States v. Pacelli,* 470 F.2d 67, 70–71 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973); see *Warden v. Hayden,* 387 U.S. 294, 300–310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966). In the case at bar, the police were legitimately within Evans' apartment pursuant to a proper search warrant issued by a California magistrate. They were not engaged in a "general, exploratory rummaging in a person's belongings," see *Coolidge v. New Hampshire,* supra, 403 U.S. at 467, 91 S.Ct. at 2039, but were searching for the 9 mm. pistol and ammunition specified in the warrant. There is no evidence to indicate that the police had prior knowledge of the passports or their location, nor of any intent to seize them prior to their discovery. See *Coolidge v. New Hampshire,* supra, 403 U.S. at 470–71, 91 S.Ct. 2022. The passports were found during the search for the weapon specified in the warrant which was never found and which might easily have been in the drawers in which the passports were discovered. When the police, in the course of their search, inadvertently encountered, in plain view, documents which by their very nature, might be incriminating as evincing an intention to depart the jurisdiction in haste, we think that the police had a right to examine them further. Under these circumstances, therefore, seizure of the passports was justified.[5] Moreover, as previously indicated, no objection to the seizure was made until after trial was completed.

■ Rollins' final objection to the admission of the passports is that the Government furnished an unexecuted

---

**5.** Appellant cites *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), for the proposition that items not specified in a search warrant may not be seized under its authority. As we have observed on a prior occasion, *United States v. Pacelli,* 470 F.2d 67, 71 n.6 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973), the Supreme Court's decision in *Coolidge v. New Hampshire,* supra, casts doubt upon the continuing validity of such reliance. While not

overruling *Marron,* the Court in *Coolidge* authorized seizures of unspecified objects pursuant to a warrant when otherwise justified under the plain view doctrine and viewed *Marron's* result, upholding the seizure of business records not specified in a search warrant, as indicating that for such material to be admissible, its discovery must truly have been inadvertent. Since it is clear that the inadvertence requirement is met here, we do not view the language of *Marron* as requiring reversal.

copy of the warrant and supporting affidavit at trial and that this copy was therefore insufficient to establish that the seizure of the passports was lawful. This argument is presented for the first time on this appeal and also was clearly waived. If the issue had been raised below, the Government would undoubtedly have obtained a signed copy. By his failure to point out to the district court that the affidavit was unsigned and unsworn, appellant abandoned any possible claim of invalidity. The Government had no obligation to go forward to show validity in the absence of any indication that validity was in question. See *United States v. Thompson,* 421 F.2d 373, 377 (5th Cir.), vacated on other grounds, 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17 (1970); see also *United States v. Crane,* 445 F.2d 509, 519–20 (5th Cir. 1971).

### III.

■■■ The district court's denial of appellant's motion to suppress the items seized from his person pursuant to his 1974 arrest was proper. Appellant argues that his arrest was invalid because the Government did not attempt to secure an arrest warrant although it clearly had the time and opportunity to do so. However, it is settled law in this Circuit that no warrant is required for a daytime arrest which has been made on probable cause.[6] *United States v. Gonzalez,* 483 F.2d 223, 225 n.2 (2d Cir. 1973); *United States v. Fernandez,* 480 F.2d 726, 740 n.20 (2d Cir. 1973); *United States v. Hall,* 348 F.2d 837, 841–42 (2d Cir.), cert. denied, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965). Such a warrantless arrest falls within the general rule set forth in *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925) that ". . . a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony." See *United States v. Gonzalez,* supra, 483

F.2d at 225 n.2. This case does not involve a "forceful nighttime entry into a dwelling" to arrest a person in his own home. See *Coolidge v. New Hampshire,* supra, 403 U.S. at 480, 91 S.Ct. at 2045; *Jones v. United States,* 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). In the present circumstances, where the arresting officer had reason to expect that someone would present himself at a public place on a specific date, in the daytime, and requiring no force for apprehension, no warrant was required to arrest him and prevent his seizing the proceeds of his illegal scheme. Rollins' arrest having been valid, the search of his person incident to that arrest was also valid. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

### IV.

■■■ We have carefully considered the remaining claims raised by appellant but find them to have no merit. We find no reversible error in the admission into evidence of the Kenya Post Office Directory; it was introduced via the testimony of a witness who identified it and there was a complete absence of any evidence casting doubt on its validity. See 5 *Moore's Federal Practice* ¶ 44.01[6], at 44–10 (2d ed. 1974). The evidence presented was sufficient to establish mailing and Rollins' participation in and knowledge of the scheme to defraud by use of the mail. The decision not to require the postal inspector assisting the prosecutor to be sequestered rested well within the trial judge's discretion. See *United States v. Pellegrino,* 470 F.2d 1205, 1208 (2d Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973). Judge Cannella's clarification of some witnesses' testimony was also within bounds and his instructions to the jury were proper.

The judgment of the district court is affirmed.

---

6. It is beyond doubt that there was probable cause for the arrest and appellant does not claim otherwise on this appeal.