531 F.2d 1167
 Dollree MAPP and Alan Lyons, Petitioners-Appellants,
v.
WARDEN, NEW YORK STATE CORRECTIONAL INSTITUTION FOR WOMEN,
BEDFORD HILLS, NEW YORK, and Warden, Great Meadow
Correctional Facility, Comstock, New
York, Respondents-Appellees.
 No. 494, Docket 75--2119.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 15, 1975.
Decided March 16, 1976.
 
 Eleanor Jackson Piel, New York City, for appellant Mapp.
 Nancy Rosner, New York City (Rosner, Fisher & Scribner, Jeffrey Dwight Ullman, New York City, of counsel), for appellant Lyons.
 Barry Dorfman, New York City (Louis J. Lefkowitz, Atty. Gen. of N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellees.
 Before MANSFIELD, OAKES and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Dollree Mapp and Alan Lyons, each convicted of a State narcotics offense, sought a writ of habeas corpus in the District Court for the Eastern District of New York, primarily on the ground that certain evidence introduced at their joint trial was the product of an unconstitutional search. They appeal from the dismissal of their petition by Judge Walter Bruchhausen. We affirm.
 
 
 2
 As the result of information supplied by a confidential informant as well as their own investigative efforts, New York City police officers came to believe that appellants were packaging narcotics in an apartment at 155--15 North Conduit Avenue, Queens, rented in the name of Harold and Bettie Smalls, and were storing them at Mapp's residence at 118--46 Nashville Boulevard. A warrant authorizing a search of these premises for 'heroin and other narcotic drugs' was obtained on February 13, 1970, and executed on February 18, 1970. Drug processing paraphernalia and more than a pound of heroin were seized in the North Conduit Avenue apartment. No narcotics were found at the Nashville Boulevard residence, but in the course of the search five rent receipts made out to Harold and Bettie Smalls were discovered in a dresser drawer in the bedroom. The drugs and the receipts were introduced at trial over appellants' objections.
 
 
 3
 Appellants contend that this evidence was seized in violation of the Fourth Amendment. They say that the hearsay statements of a confidential informant in the search warrant application[1] did not establish probable cause for the issuance of the warrant because they did not satisfy the dual standard of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We disagree.
 
 
 4
 When an informant's tip is relied upon to establish probable cause, these cases require that the warrant application set forth the underlying circumstances upon which the informant based his conclusions and disclose facts which give assurance of the informant's reliability or credibility. Spinelli, supra, 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643. The basis of the informant's belief here was information supplied by Mapp herself, a source which could hardly be faulted. United States v. Sultan,463 F.2d 1066, 1068 (2d Cir. 1972); United States v. Viggiano, 433 F.2d 716, 718 (2d Cir.), cert. denied, 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1970). While her reference to 'bagging up' might be equivocal in a different context, the balance of the affidavit makes it quite obvious that Mapp was referring to drugs.[2]
 
 
 5
 Although the informant did not have a previous track record of reliability,[3] this is not the only means whereby an informant's trustworthiness can be established. United States v. Rollins, 522 F.2d 160, 164--65 (2d Cir. 1975); United States v. Bozza, 365 F.2d 206, 225 (2d Cir. 1966). Here, credibility was supported by an independent police investigation, Rollins, supra, 522 F.2d at 165; Viggiano, supra, 433 F.2d at 718--19, including surveillance of appellants' trips between Nashville Boulevard and North Conduit Avenue, a check of telephone company records and the identification of Mapp's picture by the secretary to the management agent for the North Conduit Avenue building. This corroboration of the informant's story, sufficient in itself to establish reliability, Sultan, supra, 463 F.2d at 1069; Rollins, supra, 522 F.2d at 165, was bolstered by Mapp's remarks, overheard by Detective Bergersen, which clearly indicated that a narcotics business was being conducted at both the North Conduit Avenue and Nashville Boulevard addresses. We conclude, therefore, that there was a substantial basis for crediting the hearsay. United States v. Harris, 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723, 732 (1971); Rollins, supra, 522 F.2d at 165.
 
 
 6
 Appellant Mapp[4] asserts that the search of the Nashville Boulevard residence was improper because the information relied upon to establish probable cause, secured from the November 6, 1969, telephone call, was stale. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); Durham v. United States, 403 F.2d 190 (9th Cir. 1968), vacated on other grounds, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971) (per curiam). We agree that it was incumbent upon the police to demonstrate probable cause as of February 13, 1970, the date the warrant was issued, Durham, supra,403 F.2d at 193; United States v. Harris, 482 F.2d 1115, 1119 (3d Cir. 1973). However, construing the affidavit as a whole and in a commonsense and realistic fashion, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965), we find that this burden was satisfied. Mapp's[5] November 6 admission that she stored narcotics at Nashville Boulevard was not a reference to a single, isolated narcotics violation. Rather, the affidavit convincingly showed that appellants were engaged in an ongoing narcotics operation following a consistent pattern in which the North Conduit Avenue and Nashville Boulevard addresses played discrete roles. '(W)here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.' United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972). Surveillance established a substantial connection between the two premises as late as February 8, 1970. Mindful of the deference to which a magistrate's determination of probable cause is entitled, United States v. Ramirez, 279 F.2d 712, 716 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960), it could reasonably be inferred from the affidavit that the probable cause clearly existing on November 6 continued to the time the search warrant was issued. United States v. Rahn,511 F.2d 290, 293 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (Oct. 7, 1975); Johnson, supra, 461 F.2d at 287. Compare Durham, supra, 403 F.2d at 194.
 
 
 7
 Mapp next contends that, even if the search warrant permitted the initial intrusion at Nashville Boulevard, seizure of the rent receipts could not be justified under the plain view doctrine. '(W)here the police know in advance the location of the evidence and intend to seize it,' discovery is not inadvertent. Coolidge v. New Hampshire, 403 U.S. 443, 470--71, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564, 585 (1971). However, despite the fact that the searching officers knew that appellants had received rent receipts for the North Conduit Avenue apartment under the name Smalls, there is nothing to indicate they had prior knowledge that the receipts were at Nashville Boulevard, or any intent to seize them before their discovery. Rollins, supra, 522 F.2d at 166 (dictum). They were found in the course of a search for narcotics in a drawer in which drugs might easily have been secreted. Id. When an officer noticed the name Smalls, the receipts naturally caught his attention. It took no detailed examination to make this discovery, and we see no reason to upset the State court's presumptively correct[6] finding that the significance of the receipts as evidence was 'immediately apparent to the police.' People v. Mapp, No. 717/70 (Sup.Ct. Nov. 30, 1972) (Balbach, J.). Indeed, it would be somewhat absurd to require an investigator to be oblivious to that which would be apparent to anyone else with normal powers of observation. See also United States v. Sedillo, 496 F.2d 151 (9th Cir.), cert. denied, 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974); United States v. Damitz, 495 F.2d 50, 56 (9th Cir. 1974). We hold that the receipts, in plain view, were properly seized in the course of a lawful search.
 
 
 8
 Appellants also assert that the Bergersen affidavit contained misrepresentations which, they contend, mandate reversal of their convictions, see United States v. Gonzalez, 488 F.2d 833, 837--38 (2d Cir. 1973), or, at minimum, a hearing. They make much of the conflict between the statement in the affidavit that the North Conduit Avenue apartment was being used on October 6, 1969, to package narcotics, and defense testimony that the project in which the apartment was located was not open for occupancy until November 1969. This apparent inconsistency merely challenges the accuracy of the information furnished by the informant.[7] Probable cause is not defeated because an informant may have erred or lied, 'as long as the affiant accurately represented what was told him', Sultan, supra, 463 F.2d at 1070; and there is no evidence that Bergersen misrepresented what he was told. See United States v. Pond, 523 F.2d 210, 214 (2d Cir. 1975). In any event, in view of the other substantial allegations of criminal activity contained in the affidavit, we find little materiality in this minor discrepancy in dates. United States v. La Vecchia, 513 F.2d 1210, 1217--18 (2d Cir. 1975); Gonzalez, supra, 488 F.2d at 838.
 
 
 9
 Appellants' other claimed discrepancies merit but passing comment. Bergersen's inability to recall at a suppression hearing whether he saw appellants actually enter the North Conduit Avenue apartment on February 1, and his lack of memory of the dates on which he received the informant's messages set forth in the affidavit in no way belie his statements in the affidavit, made when his memory was fresher. Though Bergersen admitted he did not personally know that the informant had spoken to Mapp during the November 6 telephone conversation, the affidavit contained no representation that he did know. Appellants have not made the initial showing of falsehood prerequisite to a hearing on the veracity of the affidavit, United States v. Steinberg, 525 F.2d 1126, 1130--31 (2d Cir. 1975), petition for cert. filed, 44 U.S.L.W. 3439 (Jan. 22, 1976); United States v. Dunnings, 425 F.2d 836, 840 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970), and have failed to demonstrate any basis for invalidating the search.
 
 
 10
 Finally, appellants contend that, because the information supplied by the informant was essential to the establishment of probable cause, the State court's refusal to compel disclosure of his identity was error. The District Judge properly rejected this claim because his review of state criminal proceedings under 28 U.S.C. § 2254 is limited to errors of constitutional magnitude, Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973); United States ex rel. Stanbridge v. Zelker,514 F.2d 45, 50 (2d Cir.), cert. denied, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102, 44 U.S.L.W. 3205 (Oct. 6, 1975); and where the issue is one of probable cause disclosure of 'the identity of an informer is not constitutionally required even though his information is the sole basis for probable cause.' United States v. Comissiong, 429 F.2d 834, 837 (2d Cir. 1970). See also United States ex rel. Coffey v. Fay, 344 F.2d 625, 633 (2d Cir. 1965), aff'd after remand, 356 F.2d 460 (2d Cir. 1966) (per curiam).
 
 
 11
 Moreover, it is settled in this Circuit that an informant must be produced only when his story constitutes "the essence or core or main bulk' of the evidence brought forth which would otherwise establish probable cause.' United States v. Tucker, 380 F.2d 206, 212 (2d Cir. 1967). See Comissiong, supra, 429 F.2d at 838--39; United States v. Johnson, 467 F.2d 630, 639--40 (2d Cir. 1972), cert. denied, 410 U.S. 932, 93 S.Ct. 1382, 35 L.Ed.2d 595 (1973). Though the informant's statements were a major factor in the finding of probable cause, there was substantial independent evidence which corroborated key elements of the tip. 'The independent evidence . .. constitutes a sufficient voucher against fabrication, although obviously not a complete one.' Comissiong, supra, 429 F.2d at 839. See United States v. Carneglia, 468 F.2d 1084, 1088--89 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973).
 
 
 12
 Finding no constitutional defect in the searches involved in this case, we affirm the dismissal of the petition for writ of habeas corpus.[8]
 
 
 
 [1]
 The substantive portions of the affidavit of Detective John Bergersen read as follows:
 '(A) On October 6, 1969 a confidential informant who has not proven reliable in the past, told your deponent that Dollree Mapp. B $1478934 100, and Alan Lyons B $182475 $8359755 are packaging and selling narcotic drugs, to wit: heroin, and are processing and cutting and packaging such drugs in premises 155--15 North Conduit Avenue, Queens, New York, Apt. 2R. The confidential informant further states that Mapp and Lyons were storing such packaged drugs in premises 118--46 Nashville Blvd., Queens, New York, in the part of the house occupied by them (first floor and basement).
 '(B) Said confidential informant further stated that on Feb. 1, 1970, Dollree Mapp told the informant that she and Alan Lyons were going to 'bag-up' all day and could be reached at telephone $723--1387. A check of the records of the New York Telephone Co. reveals that telephone $723--1387 is listed to one Harold Smalls Apt. 2R, 155--15 North Conduit Ave., Queens, New York. On Feb. 1, 1970, at approximately 8:15 A.M. your deponent followed Dollree Mapp and Alan Lyons from premises 118--46 Nashville Blvd., Queens, New York to premises 155--15 North Conduit Ave., Queens, New York, wherein both Mapp and Lyons entered Apt. 2R.
 '(C) Said confidential informant further stated that on Feb. 5, 1970, Dollree Mapp told the confidential informant that she and Alan Lyons were going to 'bag-up' all day Sunday Feb. 8, 1970. On Feb. 8, 1970, your deponent, at approximately 8:20 A.M., followed Dollree Mapp and Alan Lyons from premises 118--46 Nashville Blvd., Queens, New York, to premises 155--15 North Conduit Avenue, Queens, New York. While inside said premises your deponent overheard Dollree Mapp say to Alan Lyons, 'We're going to have to bust our m(. . .) f (. . .) a(. . .) to get this s(. . .) bagged up by tomorrow.' Mapp and Lyons then entered Apt. 2R at which time your deponent left the premises.
 '(D) On Feb. 9, 1970 your deponent showed a photograph of Dollree Mapp to the secretary of Mr. Rose, the sales and management agent of the building 155--15 North Conduit Ave., Queens, New York, and she identified Mapp as being the person who paid the rental fee for Apt. 2R, 155--15 North Conduit Ave., Queens, New York.
 '(E) The confidential informant further stated that Dollree Mapp and Alan Lyons 'bag-up' heroin and marijuana, at premises 118--46 Nashville Blvd., Queens, New York. On November 6, 1969 at approximately 8:00 P.M., Det. Sylvan Topel, Sh. $1828, New York City Police Dep't. Narcotics Division, Special Investigating Unit called telephone instrument number LA 7--2994 located at premises 118--46 Nashville Blvd., Queens, New York, and listed the Maudell Mapp and listened in while the aforementioned confidential informant spoke to Dollree Mapp. In the course of the conversation, Dollree Mapp indicated that she had a quantity of narcotics in her house at that time.
 '(F) On January 13, 1970 at approximately 4:40 P.M. Alan Lyons sold a quantity of heroin to John Doe, a police officer for a sum of U.S. currency in New York County.'
 
 
 [2]
 The face of the affidavit demonstrates the informant's familiarity with appellants' operation. Mapp trusted the informant with the telephone number at her 'business' address and knew him well enough to discuss narcotics over the telephone. Affidavit, PP B, E. The fact that she felt it necessary to keep the informant posted as to her whereabouts indicates that she was in more or less regular contact with him. See United States v. Pond, 523 F.2d 210, 213 (2d Cir. 1975)
 
 
 [3]
 The parties agree that the statement in P A of the affidavit that the informant had 'not proven reliable in the past' should be construed to mean that the informant's reliability was untested, not that he had actually been untrustworthy on prior occasions
 
 
 [4]
 Appellant Lyons has no standing to contest the seizure of the rent receipts at the Nasvhille Boulevard residence. He was not present at the time of the search, and he has alleged no proprietary interest in the apartment or in the rent receipts. Brown v. United States, 411 U.S. 223, 225--26, 228, 229, 93 S.Ct. 1565, 1567--69, 36 L.Ed.2d 208, 211--14 (1973); Alderman v. United States, 394 U.S. 165, 171--72, 89 S.Ct. 961, 965--66, 22 L.Ed.2d 176, 185--86 (1969)
 
 
 [5]
 Mapp urges that there is no proof that she was the speaker, but the magistrate could infer both from the data relating to the telephone number, and the informent's familiarity with Mapp that her voice was in fact overheard
 
 
 [6]
 28 U.S.C. § 2254(d). United States ex rel. Stanbridge v. Zelker, 514 F.2d 45, 51 (2d Cir.), cert. denied, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102, 44 U.S.L.W. 3205 (Oct. 6, 1975)
 
 
 [7]
 It is not at all clear that the informant's statement was inaccurate. The same defense witness indicated that the project would have opened in September but for an elevator strike, and that the first Smalls rent receipt wad dated August 26, 1969. The apartment on the second floor was accessible via the stairs and was sparsely furnished when searched in February. Even if the official opening was delayed until November, it appears that on October 6, 1969, there was little to prevent appellants from using the apartment for the limited purpose of packaging narcotics
 
 
 [8]
 Although Mapp concedes that she has neither exhausted available State appellate remedies, 28 U.S.C. § 2254(b); United States ex rel. Gibbs v. Zelker, 496 F.2d 991 (2d Cir. 1974), nor properly presented the point below, United States ex rel. Fein v. Deegan, 410 F.2d 13 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969), she also argues that there was insufficient evidence to support her conviction, intimating that failure to press this issue before resulted from a conflict of interest between appellants' counsel. However, Mapp expressly waived this potential conflict prior to trial, and this Court has long held that a sufficiency claim 'is essentially a question of state law and does not rise to federal constitutional dimensions,' United States ex rel. Terry v. Henderson, 462 F.2d 1125, 1131 (2d Cir. 1972), absent a record so totally devoid of evidentiary support that a due process issue is raised. See Vachon v. New Hampshire, 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974) (per curiam). Such is not the case here