# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 19, 2007

## STATE OF TENNESSEE v. MARCUS RICHARDS

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR101400A&B     Timothy L. Easter, Judge**

---

**No. M2006-02179-CCA-R3-CD - Filed February 6, 2008**

---

Defendant pled guilty to misdemeanor possession of cocaine. Prior to his plea, Defendant filed and the trial court heard a suppression motion. The trial court, after the hearing and submission of briefs by the parties, denied the motion. Defendant properly preserved a certified question of law. After a thorough review of the record, we reverse the judgment of the trial court and dismiss the charge against Defendant.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Indictment Dismissed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Venus Niner, Franklin, Tennessee, for the Appellant, Marcus Richards.

Robert E. Cooper, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Background

The arrest of Defendant arose out of a tip from a citizen informant. The identity of the citizen informant was not revealed at the suppression hearing, although the officer who took the call, Sergeant Chris Clausi, testified at the hearing. Sergeant Clausi testified that the citizen informant called him and stated that he ("he" is being used as a gender-neutral pronoun, because the gender of the citizen informant was not revealed) had seen a drug transaction at the picnic table behind 144 Ninth Avenue in Franklin. The citizen informant told Sergeant Clausi that Trent Covington (who resided at 144 Ninth Avenue with his mother) was involved and so was the driver of a maroon SUV. Sergeant Clausi testified that he knew Maurice Head drove a maroon SUV and believed that was who the citizen informant was referring to. The citizen informant also identified a woman sitting

at the table as being a person who was in Drug Court. Defendant was not named by the citizen informant and Sergeant Clausi testified that only three people were mentioned by the citizen informant.

Sergeant Clausi testified that the citizen informant had called him before and given accurate information about drug transactions and those involved in the transactions in this neighborhood. He further testified that this person was not a paid informant or someone who was "working off charges." As far as Sergeant Clausi knew the citizen informant had not been convicted of any crimes, although he did testify that he had not performed a criminal history check on the person. When Sergeant Clausi arrived at 144 Ninth Avenue, he found the group of people the citizen informant described sitting at the picnic table behind the home.

After receiving the phone call, Sergeant Clausi contacted the officers who usually patrol that area, Officers Rose and Davis. He told them that he had received a phone call from a citizen informant about possible drug activity "behind Trent's house at the picnic table with the girl from Drug Court." Officers Rose and Davis arrived first on the scene and were conducting the investigation when Sergeant Clausi arrived.

Officer Rose testified that, upon receiving Sergeant Clausi's information, Officer Davis and he advised Sergeant Clausi that they would park on Ninth Avenue and Natchez Street and approach the home from the left side. Officer Rose testified that it was a tactical decision to not approach the home from the front. Because of the knowledge that narcotics can easily be destroyed, he did not want the people seated at the table to see him approach until he was close. Officer Rose testified that he was dressed in plain clothes. Officer Rose stated that one of the subjects (Maurice Head) noticed the officers as they approached. Mr. Head dropped something between his legs. Officer Rose also observed Mr. Head sweep the table off with his hand. Officer Rose testified that he said "don't move, police, nobody move." Mr. Head then moved as if to get up and was told again not to move. Officer Rose testified that he could not determine what was dropped by Mr. Head until he arrived at the picnic table and saw a "corner baggie" on the ground. Also at the picnic table, he observed a white powder substance "dusting" the ground and sprinkled on the table.

Officer Davis, who was in uniform during the incident, stated that when Mr. Head noticed the officers, he placed something on the ground and that at that point Officer Davis could not determine what the "something" was. He testified that Officer Rose then said something like "hey stop what you're doing, just keep your hands up where we can see them." Officer Davis stated on cross-examination that this was said in a manner that was not conversational. Officer Davis testified that none of the white substance found on the table, on the ground, or near the corner baggie was sent to be tested at the crime laboratory. Officer Davis stated that he searched Defendant twice. The first time was without consent because he "had immediate access to the cocaine" and to ensure that Defendant did not have any "weapons or anything obvious." After patting him down, Officer Davis told Defendant to sit back down.

The officers then searched Mr. Covington and found a white substance in his wheelchair. Officer Davis testified that Sergeant Clausi then told him to "go ahead and do a full search on [Defendant]." Officer Davis complied with Sergeant Clausi's request and found a baggie in Defendant's pant pocket. The baggie contained what was believed to be cocaine and marijuana (later confirmed by lab tests). Defendant was placed under arrest. Defendant pled guilty to misdemeanor possession of cocaine and properly preserved as a certified question of law the following issue:

> Whether the evidence seized from the defendant should have been suppressed because the continued seizure and search of the person of the defendant by the police was not supported by probable cause or reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution.

## II. Analysis

### A. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Article I, section 7 of the Tennessee Constitution provides that:

> People shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact

-3-

committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Both of these constitutional provisions are intended to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730, 18 L. Ed. 2d 930 (1967); *see also State v. Keith*, 978 S.W.2d 861, 865 (Tenn.1998).

Under both the federal and state constitutions, warrantless seizures are presumed unreasonable and evidence obtained from such seizures should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S. Ct. 2022, 2032, 29 L. Ed. 2d 564 (1971); *State v. Watkins*, 827 S.W.2d 293, 295 (Tenn.1992). Our Supreme Court has outlined these exceptions as searches incident to arrest, plain view, stop and frisk based on reasonable suspicion of criminal activity, exigent circumstances based on probable cause, hot pursuit, and consent. *State v. Bartram*, 925 S.W.2d 227, 230 n.2 (Tenn. 1996).

B. The Reliability of the Citizen Informant

When an informant is a member of the "criminal milieu" the reliability of his information is determined under the *Aquilar-Spinelli* standard. *See Spinelli v. United States*, 393 U.S. 410 (1969); *Aquilar v. Texas*, 378 U.S. 108 (1964). This test must be used to ensure the basis of the informant's knowledge and the credibility or the reliability of the information. *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989).

When information is gathered from a citizen with no ties to the criminal community, the reliability of the information is presumed. An affidavit for a search warrant does not have to establish the credibility prong of *Aquilar-Spinelli*. *State v. Melson*, 638 S.W.2d 342, 355 (Tenn. 1982). While the instant case does not involve a search warrant, the standard for reliability of the informant's information remains the same. *See State v. Dennis W. Menzies*, No. W1998-00608-CCA-R3-CD, 2000 WL 424277 at *5-7 (Tenn. Crim. App., at Jackson, April 20, 2000), *perm. app. denied* (Tenn. Aug. 10, 2000). In order to be presumed reliable, there must be information about the citizen informant's status or his relationship to the events or persons involved. *Melson*, 638 S.W.2d at 354-56. Simple claims that the informant was a concerned citizen, was not paid for the information, was not "working off charges," and was acting out of a civic duty are insufficient to establish that the individual qualifies as a citizen informant. *See State v. Stevens*, 989 S.W.2d 290, 294 (Tenn. 1999). In order to determine if someone is a citizen informant the affidavit must contain particularized information as to how he obtained the information. *Stevens*, 989 S.W.2d at 294. This is especially relevant when the information provided is something like the location of drugs which would more likely be known by someone of the criminal milieu. *Id*. (quoting 2 Wayne R. LaFave, *Search and Seizure* § 3.4(a) (3d ed. 1996)). In order to determine if a citizen informant, whose

identity is unknown, is reliable, we must look to the totality of the circumstances surrounding the affidavit. *Melson*, 638 S.W.2d at 356.

In the instant case, the citizen informant was known to Sergeant Clausi as having provided reliable information in the past. The citizen informant stated that he had seen a "drug deal" involving Trent (who resided at the home the transaction occurred), a man driving a maroon SUV, and a woman, who the citizen informant identified as being a member of drug court. The citizen informant told Sergeant Clausi that he had observed the drug transaction. "The fact that information given by the informant is based upon his personal observation is a reliable basis for [the] conclusion that his statements are true." *Id*. at 355 (citing *United States v. Rollins*, 522 F.2d. 160 (2nd Cir. 1975)). Because Sergeant Clausi had information from this citizen that had proved reliable in the past and because the citizen informant gave accurate information as to who was present at the incident and because the information was from a personal observation by the citizen informant, the citizen informant is presumed to be reliable based on the totality of the circumstances.

C. The Seizure of Defendant

When Officers Rose and Davis approached Defendant and others seated at the picnic table they testified that they saw one of the individuals drop something. Officer Rose testified he yelled, "don't move, police, nobody move." In *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) the Supreme Court held, "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter." *Bostick*, 501 U.S. at 440, 111 S. Ct. at 2389. The Tennessee Supreme Court has held that courts should consider, as part of the totality of the circumstances test, the following:

> the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen. *State v. Daniel*, 12 S.W.3d 420 (Tenn. 2000).

In the instant case, the Defendant was seized when Officer Rose said "don't move, police, nobody move." When a person at the table tried to get up, they (those seated at the table) were told again not to move. Officer Rose agreed that he yelled this statement, and Officer Davis testified that Officer Rose was not using a "conversational tone" when he made the statement. There were two officers present when the statement was made, but very soon after at least two more officers arrived. No reasonable person in that situation would have believed he was free to leave.

D. The Initial Search of Defendant

-5-

Officer Davis testified that he searched Defendant at first for two different reasons. He first stated that he searched Defendant because he was in the immediate area of the white powder on the picnic table. Officer Davis then testified that he patted down Defendant to look for weapons. The trial court, in its findings of fact, determined that the first search was conducted in order to ensure the officers' safety. As such, it falls within an exception to the warrant requirement under the "stop and frisk" exception. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

In order to "stop and frisk" a person, reasonable suspicion is required. Reasonable suspicion is suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be committed. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. In determining whether a police officer has a reasonable suspicion, a court must consider the totality of the circumstances including, but not limited to, the officer's personal objective observations, information obtained from other officers, information obtained from citizens, and the pattern of operation of certain criminals. *See United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct.690, 695, 66 L. Ed. 2d 621; *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). The police officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989).

In the instant case, Officer Davis had information from Sergeant Clausi that a possible drug transaction had taken place involving "Trent and the girl from Drug Court" behind Trent's house. Upon arriving Officer Davis saw Trent, a woman, and two men sitting at a picnic table behind Trent's house. Officer Davis testified that he saw Mr. Head drop something to the ground. He also testified that all those at the table had a look like "oh, here's the police. I'm doing something I shouldn't be doing." He stated that his knowledge of this type of look came from his experience as a police officer. When the officers approached the table, they observed a white powder scattered on the table and on the ground beneath the table. Mr. Head also had his fist clenched and, when he complied with a request to open his hand by Officer Rose, the officers saw a rolled up dollar bill with a white residue on it. The officers testified that this was, in their experience, used to snort cocaine. Officer Davis testified that he then patted down Defendant for "weapons or anything obvious." The pat down revealed nothing, and the officers told Defendant to sit back down. Officer Davis neither asked for consent nor received consent to search Defendant.

E. The Second Search of Defendant

It is well settled law that a "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837, 160 L.E.2d 842 (2005) (citing *United States v. Jacobsen*, 46 U.S. 109, 124, 104 S. Ct. 1652, 1663, 80 L. Ed. 2d 85 (1984)). In the instant case, the officers had no articulable reasons for the second search of Defendant. The initial pat down revealed nothing that would have given them probable cause or even reasonable suspicion to conduct a second search. The only circumstance that changed was cocaine found in Mr. Covington's wheelchair.

-6-

The facts of *State v. Keith A. Otey* resemble those in the instant case. In *Otey*, the defendant was stopped after leaving the home of a recently arrested drug dealer. The officer in charge of the investigation obtained a warrant to search the home and ordered another officer to stop anyone leaving the residence. *State v. Keith A. Otey*, No. M2000-01809-CCA-R3-CD, 2002 WL 560960, at *1 (Tenn. Crim. App., at Nashville, April 16, 2002) *perm. app. denied* (Tenn. June 28, 2002). The defendant was stopped after passing the officer on his way to execute the search warrant. *Otey*, 2002 WL 560960 at *3. Neither the officer who ordered the defendant to be stopped nor the officer who actually stopped the defendant had observed him engage in illegal or suspicious activity. *Id*. This Court held that mere presence at [the arrested drug dealer's] residence, without more, does not establish reasonable suspicion to justify a stop . . . " *Id*. at *5. This Court based its holding on *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 342, 62 L. Ed. 2d 238 (1979), wherein the Supreme Court held, "a person's mere propinquity to others independently suspected of criminal activity does not without more, give rise to probable cause to search that person." All the officers testified that they did not see Defendant engage in any illegal activity. Sergeant Clausi testified that Defendant was not among those identified by the citizen informant as present at the drug transaction. Because the only circumstance that changed between the first and second searches of Defendant was that a white powder was found in Mr. Covington's wheelchair, the officers did not have "probable cause particularized with respect to [Defendant]." *Ybarra*, 444 U.S. at 91, 100 S. Ct. at 342.

The fact that the officers lacked probable cause to search Defendant a second time disposes of the State's argument that the exigent circumstance exception apply. Our Supreme Court held that exigent circumstances is an exception to the warrant requirement only when the circumstances are "supported by probable cause." *Bartram*, 925 S.W.2d at 230 n.2. The officers lacked probable cause as to Defendant and therefore this exception does not apply.

## CONCLUSION

The initial seizure and search of Defendant was not a violation of his constitutional rights. The officers had reasonable suspicion based on a totality of the circumstances from the informant's information and their own observations to seize Defendant. The officers, pursuant to *Terry v. Ohio*, were authorized to "pat-down" Defendant in order to ensure their safety. However, when the seizure continued past this and the officers told Defendant to sit back down, the seizure became unconstitutional because it went beyond what was necessary for a *Terry* search. The subsequent search of Defendant leading to the discovery of the narcotics was thereby unconstitutional as well. There was no individualized probable cause as to Defendant and therefore no constitutional basis for the search.

For the foregoing reasons, the judgment of the trial court is reversed and the indictment is dismissed.

_____
THOMAS T. WOODALL, JUDGE