UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Joseph VOSPER, Defendant-
Appellant.

No. 73–2850.

United States Court of Appeals,
Fifth Circuit.

May 2, 1974.

John G. O'Brien, Pensacola, Fla. (Court-appointed), for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Robert L. Crongeyer, Jr., Nick P. Geeker, Asst. U. S. Attys., Pensacola, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Robert Joseph Vosper was convicted by a jury of robbing the West Pensacola Bank of $5,751.00. He claims error in both the actions of the trial judge and the admission of evidence offered by the government. Since we hold that two pieces of testimony should not have been admitted, we reverse and remand for a new trial.

The robbery of the West Pensacola Bank on January 21, 1972 has to be one of the wierdest ever executed. One man, Blanton Lynn, walked into the bank around one o'clock in the afternoon. He paused at a table to write a holdup note on a deposit slip and then passed it with a bag to the teller, demanding that she put the money in the bag. His gestures toward his pocket made her fear that he was armed and she quickly complied. The alarm was rung as Lynn turned to go but he walked out of the bank unimpeded.

On the street, Lynn was followed closely for several blocks by the bank security guard and the head teller until he reached a parked car in the alleyway behind a nearby service station. Both bank employees watched him climb into the open trunk of the waiting car. They observed a young woman, who turned out to be Kim Vosper, the wife of the appellant, close the trunk lid and watched her get into the car.

The bank employees maintained their vigil from both ends of the alley while the police converged on the adjacent streets. As the car was surrounded, policemen began to attempt to convince Mrs. Vosper to unlock the trunk. Communications were made difficult by her own resistance and that of the German Shepherd dog sitting on the seat of the car beside her.

Still surveying the now-raucous scene, the head teller noticed a neatly-dressed man in a blue suit. He remembered seeing the same man walk into the alley when the robber was climbing into the trunk and now he observed him standing in the crowd straining to see the car. At the teller's suggestion the deputy sheriff questioned the man who replied that his name was Robert Vosper and he was just trying to see what was going on in his car.

Vosper was searched and taken to the car where he asked his wife for the trunk key and the police opened the turtle back. Inside were Blanton Lynn, the money, the holdup note and a can of mace.

Kim Vosper and Blanton Lynn were tried and convicted for conspiring and participating in the commission of this robbery. Robert Vosper was found incompetent to stand trial with them and has been confined in the Medical Center for Federal Prisoners at Springfield, Missouri during the interim.

At his trial Vosper's counsel offered a dual defense, arguing first that he was innocent or, alternatively, if he did participate in the robbery, he was incapable of forming the requisite intent to commit the crime because he was afflicted with schizophrenia. Rejecting both defenses, the jury found Vosper guilty on each count.[1] He was sentenced to five years for conspiracy and twenty years for participating in the robbery to be served concurrently.

I

*Evidence of Weapons*

As the first error appellant argues that the trial judge improperly admitted testimony showing that Vosper possessed or had access to a hand gun.[2] Such testimony, Vosper argues, is irrelevant to the crime with which Vosper is charged because there is no evidence that either he or Blanton Lynn ever used a gun during the bank robbery and the nature of the crime itself carries no necessary implication that a gun may have been involved. Its only function was, therefore, to prejudice the appellant.

The Trial Court decided that, despite the lack of evidence relating the gun and gun-connected materials found in the car to the particular facts of the bank robbery, the appellant was charged with a crime in which a teller was intimidated with suggestions of violence and the

---

1. 18 U.S.C. § 2113(a).
 *Bank robbery and incidental crimes*
 (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
 Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
 Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. The government introduced a receipt for a Smith and Wesson pistol purchased by Kim Vosper in 1969 found in the glove compartment of the Vosper car. In addition, some testimony was offered to show that at the time this gun was purchased Kim Vosper was accompanied by a man who resembled her husband. The Court also admitted into evidence a loaded 32 caliber Browning pistol found in the console between the two front bucket seats and a shipping carton for a 38 caliber Smith and Wesson revolver found in the car at the time of the arrest.

availability of guns was therefore relevant.

■ We agree that such testimony was relevant. Vosper was charged with conspiracy to commit a robbery that gave the appearance of involving a weapon. Testimony of Vosper's relation to the guns and that guns were available to him since they were in his own automobile which could be used in the commission of such a crime is certainly pertinent.[3]

## II

### Questions By The Trial Judge To The Witness

■ After a close examination of the record, we reject appellant's second claim that the trial judge exceeded the bounds of impartiality by his questioning of the chief witness for the government, Blanton Lynn, the perpetrator of the robberies and the Vospers' traveling companion. Lynn was the only witness who could directly link Vosper to the crimes. On the stand he followed the not-unfamiliar pattern of relating a story that was inconsistent with the one he had told to an agent shortly after his arrest. The trial judge questioned Lynn in an attempt to account for this inconsistency and subsequently had him relate with greater particularity the events surrounding the robbery and the degree to which the Vospers were involved. At one point the Judge cautioned Lynn that he was under oath and subject to penalties for perjury.

■ Considering the broad powers of a federal District Judge to probe into the substance of the testimony to cull the essential issues for the jury,[4] and his province actively to elicit testimony with appropriate fair comment thereafter on the weight of the evidence,[5] we do not think the Judge exceeded the proper bounds either in the number of questions or their tone as partisan inquiry registering unbelief.

■■ As to the Judge's cautionary warning that Lynn was under oath,[6] we think he fairly balanced the interests of all. It is entirely proper—and often times it is imperative—that a witness be cautioned about the consequences of an oath, just as it is, say, in warning a non-party witness concerning his right to claim the Fifth Amendment privilege. It has to be done with care so that it cannot be interpreted as the Judge's prejudgment or, in words or tone, as implying an attempt to pressure the witness into rescinding his in-court testimony. The trial judge did not transgress that line.

## III

### The Evidence Of Prior Robberies

The appellant next complains of the admission of evidence placing him near

---

3. In a similar manner, it is much like the Second Circuit's approval of the admission of evidence that the defendants possessed many more guns at the time of arrest than the number of firearms that were actually used in the bank robbery. "Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged * * *". United States v. Ravitch, 2 Cir., 1970, 421 F.2d 1196, 1204; accord, United States v. Bujese, 2 Cir., 1967, 378 F.2d 719; cf. United States v. Goad, 10 Cir., 1970, 426 F.2d 86.

4. Ray v. United States, 8 Cir., 1966, 367 F. 2d 258, 261.

5. Kyle v. United States, 5 Cir., 1968, 402 F. 2d 443.

6. THE COURT: You know, Mr. Lynn, you have made some statements here and I want to be very careful you have told the truth here. You do know you are under oath?
 A Yes, sir, I do.
 THE COURT: And you realize that, being under oath, there might be penalties involved deliberately not to tell the truth?
 A I am aware of that.
 THE COURT: And, knowing that, you still stay with the answers you have just given us?
 A I do because, like I say, I may have given.
 THE COURT: It is not a case of what you may have given, sir, but you know or should know full well these questions were specific and you know whether you told him yes or no to these questions, these things that were asked you.

the scene of a prior robbery. The government witness testified that on the day preceding the West Pensacola Bank holdup, Lynn had robbed a finance company in Pensacola and Robert Vosper was seen approximately a block and a half from the robbery. The similarity of the two events was, so the government argued, to negate Vosper's claim of innocence with coincidences that were just *too* coincidental. The trial judge, conscious of the difficulties posed by admitting the testimony regarding the prior West Pensacola robbery, sounded a precautionary word to the jury that it was to consider the evidence for the limited purpose of showing Vosper's intent in the West Pensacola Bank robbery alone.

The determination of when evidence of other crimes should be admitted is a difficult one for a trial judge. The general exclusionary rule, i. e., that evidence of a collateral offense should never be permitted as substantive evidence of another crime for fear the jury may find guilt from bad character,[7] is easy to state, but presents real hazards that conviction may come from bad reputation.[8]

Of course one proper use is to show that the accused did the act intentionally, that is not inadvertently, accidentally, or out of carelessness. Thus, we have permitted the admission of testimony that a defendant accused of distributing cocaine passed a small amount of the drug to a government agent 20 days after the day of the charged offense.[9]

Even though we recognize that the trial judge has wide discretion [10] and that he was extremely cautious in undertaking to use it here, we think that the evidence was precipitously either on, or probably over, the line of exclusion. When evidence of other crimes is offered "[I]t must be shown that the prior acts are similar, at least sufficiently so to allow for some probative value." [11] In some ways this is fulfilled here. Vosper in Pensacola just as in West Pensacola was within a short distance of an area where a bank robbery was taking place. But where in West Pensacola there was sufficient evidence to warrant the jury inference that he was serving as lookout in this wierdly executed robbery [12] or to connect him with it in a meaningful way, in Pensacola there is little, save his presence (and Lynn as the robber thereto), to show that he had any responsibility for or participation in the Pensacola incident and the dangers of prejudice from this line of questioning outweighed the value of the admission of such evidence.[13] The fact that it was a robbery of a savings and loan office by the same robber (Lynn) and with no other action by Vosper—save being in the general vicinity—created the hazard of prejudice not only that Vosper was a law breaker, but that he ran with other such law breakers. This error cannot be considered as harmless error so a new trial is called for.

## IV

### Testimony Of The FBI Agent

Appellant's fourth and we think most important attack concerns the testimony of an FBI agent, Payne, that counsel claims was highly prejudicial. Agent

---

7. McCormick on Evidence, § 190 (2nd ed. 1972).

8. *See*, Slough & Knightly, Other Vices, Other Crimes, 41 Iowa L.Rev. 325, 326 (1956).

9. United States v. Rodriguez, 5 Cir., 1973, 474 F.2d 587.

10. *See, e. g.*, Landwehr v. United States, 8 Cir., 1962, 304 F.2d 217.

11. Slough & Knightly, Other Vices, Other Crimes, 41 Iowa L.Rev. 325, 328 (1956).

12. These involved the use of Vosper's automobile in getting to the parking lot, his knowledge that it was there as shown by his going to it, his dominion over it by opening the turtle back, plus evidence from others as to his position and actions as a probable lookout.

13. *E. g.*, Smallfield v. Home Insurance Co., 9 Cir., 1957, 244 F.2d 337; Railton v. United States, 5 Cir., 1942, 127 F.2d 691; Lambert v. United States, 5 Cir., 1939, 101 F.2d 960.

Payne was called by the government on its case-in-chief and related seeing the Vospers and Blanton Lynn together while he had a house in Ft. Lauderdale under surveillance approximately five weeks before the West Pensacola robbery. Up to this point, no objection was urged. The problem arose—as do most —with the asking of the unnecessary question and the damage was done in this case when Agent Payne replied:

> A. We were conducting the surveillance because there had been a series of bank robberies in Fort Lauderdale and we had received in our investigation some information that a man living at this address on West Las Olas Boulevard was suspected of being a bank robber and was in fact planning to leave on the day that we conducted the surveillance, was planning to leave Fort Lauderdale to go to New Orleans, where it was anticipated that they would conduct a bank robbery. The purpose of our investigation—

Again conscious that the government was approaching, if it did not already go beyond, the brink, the Judge instructed the jury to disregard anything beyond the fact that Payne saw the trio together. The jury was not to consider the reasons for the surveillance "or any other matters going into suspicion about other bank robberies or anything else."

The efforts of the government to justify the question and its expectable response will not do. Of course, the government was quite right that Payne's testimony of identification was relevant as to a common scheme or motive. It

showed close-prior association between Lynn and Vosper—a fact which, if credited, destroys the fishy story that in flight from the West Pensacola robbery, Lynn just happened on the Vosper turtle back as his port of haven.

Payne's testimony of *what* he saw was probative, relevant and perfectly admissible. But the damage, unrelated to *what* was seen, came from *why* Payne was looking. This not only linked Lynn and Vosper together but in doing so pointed the finger of suspicion to Vosper (and Lynn) as persons reported or thought to be engaging in other robberies. It was proof of community reputation that had added credence because the community's suspicions came from law enforcement officers.

 We approach the question mindful that a clear instruction not to consider evidence by the trial judge generally eliminates any reversible error.[14] But we have in the past reversed such cases where the evidence conveyed to the jury left an indelible and highly prejudicial effect.[15] Inevitably, where the admission of evidence becomes so prejudicial as to compel another trial is determined on a case by case basis.[16]

 On that approach, the error was gross and the harm inescapable. If, as the government hardly supposed it could do in this fashion, it was offered to prove another crime or crimes, it was technically deficient under the "plain, clear and conclusive" test required before evidence of collateral crimes may be used.[17] More likely it was a spur of the

---

14. Helton v. United States, 5 Cir., 1955, 221 F.2d 338, 340-341. More often than not we affirm the ruling of a trial judge denying plaintiff's motion for a mistrial. *See, e. g.,* United States v. Roland, 5 Cir., 1971, 449 F.2d 1281; United States v. Sanchez, 5 Cir., 1971, 449 F.2d 204; Driver v. United States, 5 Cir., 1971, 441 F.2d 276; Leonard v. United States, 5 Cir., 1967, 386 F.2d 423; Conner v. United States, 5 Cir., 1963, 322 F.2d 647; *cf.,* United States v. Williamson, 5 Cir., 1973, 482 F.2d 508; Russell v. United States, 5 Cir., 1970, 429 F.2d 237, 239.

15. United States v. Ratner, 5 Cir., 1972, 464 F.2d 169; United States v. Brown, 5 Cir., 1971, 451 F.2d 1231, 1234; Odom v. United States, 5 Cir., 1967, 377 F.2d 853; McMillan v. United States, 5 Cir., 1966, 363 F.2d 165; Helton v. United States, 5 Cir., 1955, 221 F.2d 338.

16. United States v. Ratner, 5 Cir., 1972, 464 F.2d 169, 173.

17. United States v. Broadway, 5 Cir., 1973, 477 F.2d 991.

moment decision for which time and reflection offered no adequate justification. So it comes down to harmful reputation of partners in crime—the same kind of evidence.[18]

Reversed and remanded.

18. United States v. Ratner, 5 Cir., 1972, 464 F.2d 169; Odom v. United States, 5 Cir., 1967, 377 F.2d 853.