UNITED STATES of America, Appellee,

v.

Susan M. BRAUNIG, Defendant-Appellant.

No. 703, Docket 76–1448.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1977.

Decided April 11, 1977.

Certiorari Denied June 6, 1977. See 97 S.Ct. 2686.

Donald E. Nawi, New York City (Howard L. Jacobs, New York City, on the brief), for defendant-appellant.

Eugene Neal Kaplan, Asst. U.S. Atty., S.D.N.Y., New York City (Robert B. Fiske, Jr., U.S. Atty., Jed S. Rakoff and Frederick T. Davis, Asst. U.S. Attys., S.D.N.Y., New York City, on the brief), for appellee.

Before ANDERSON, OAKES and GURFEIN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

Susan M. Braunig and her two co-defendants, Michael S. Gardner and Sy Yoakum Guthrie, III, were indicted on January 9, 1976 and charged with a series of mail and wire frauds stemming from "advance fee" schemes and bank frauds (all of which involved the use of fictitious names and titles), and for perjury before the grand jury. Gardner was convicted on all thirteen fraud counts charged against him. These judgments of conviction were affirmed by this court, without opinion, on October 22, 1976. Guthrie was acquitted on the six fraud counts in which he was named, and a *nolle prosequi* was later filed by the Government with respect to the outstanding perjury count against him, which had been severed at the time of his trial. Braunig was tried separately because, when she violated her bail limits and fled to Canada, she was arrested, convicted and sentenced to several months imprisonment for her part in a check-kiting scheme in Canada before she was returned to the Southern District of New York to face the charges pending there.

At the beginning of her trial on September 13, 1976 the district court granted the Government's motion to sever nine of the fifteen counts in which Braunig was named. She was, therefore, tried on the six remaining counts as follows: Counts 5 and 6, charging her with participating with her co-defendant Gardner in a "fraudulent check" scheme to defraud Barclay's Bank of New York in violation of 18 U.S.C. § 1341 and § 2; Counts 7 and 8, charging her, together with co-defendants Gardner and Guthrie, with committing an "advance fee" swindle of a wholesale travel agency in violation of 18 U.S.C. §§ 1341, 1343 and § 2; Count 13, charging her as well as Gardner with committing a fraudulent "charge account" scheme whereby they opened numerous credit accounts under false and fictitious names and titles and ran up large bills which they never intended to pay in violation of 18 U.S.C. § 1342 and § 2; and Count 15, charging her with making numerous false material declarations to the grand jury in violation of 18 U.S.C. § 1623. The jury returned verdicts of guilty on Counts 5, 6, 13 and 15 but it found her not guilty on Counts 7 and 8. On October 20, 1976 she was sentenced to two years imprisonment on each of the counts on which she was convicted, to be served concurrently.

On this appeal, Braunig argues that it was error for the trial court to have denied her pre-trial motion to suppress certain evidence obtained from a search made by the F.B.I., with the consent of the landlady, of the apartment Braunig had shared with Gardner since March of 1974, but from which she had already been evicted. The circumstances surrounding the eviction and subsequent search were as follows:

A special agent of the F.B.I., Thomas Myers, assigned to investigate both the Gardner and Braunig cases, had learned about this apartment and had been in contact with the owner and landlady of the building, one Kathleen Flanagan. In March of 1976, after Gardner's imprisonment, the landlady began eviction proceedings against Braunig and Gardner for non-payment of rent. Braunig, then free on bail pending the instant trial, paid the overdue rent by March 10, 1976. The eviction proceedings were then abandoned. Two days later, however, Braunig had been arrested and incarcerated in Canada. She, therefore, failed to appear on the date assigned for trial in New York and a bench warrant was issued for her arrest. The rent again fell into arrears. On April 20, 1976, the landlady, who had continued meanwhile to communicate with Special Agent Myers, again commenced eviction proceedings against Braunig and Gardner in the Civil Court of the City of New York. Service of process was effected in compliance with New York Real Property Actions and Proceedings Law (hereinafter cited as RPAPL) § 735.[1] On May 7, 1976, the Civil

---

1. § 735 provides in pertinent part:
   "Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion who resides or is em-

Court entered a default judgment of eviction. The landlady subsequently informed the F.B.I. of her intention to execute the judgment by taking possession of the premises and did so on May 25, 1976, when Special Agent Myers and a City Marshal were present. She then consented to a search of the apartment by the F.B.I. This disclosed several hundred documents, including incriminating letters written by Braunig to Gardner, a State Bank of Albany certification stamp and blank check, and a Master Charge Card in the name of "S. M. Gardner." The landlady further cooperated with the Government by later turning over to it Braunig's diary, which the F.B.I. search had not uncovered. No search warrant was ever sought or obtained in this case, although at the time of the search in question Gardner's trial had not yet been concluded.

In its opinion of September 13, 1976, the district court, in denying the suppression motion, recounted the above facts and stated that the issue for decision was whether the appellant "maintained a reasonable expectation of privacy in the items seized" following the eviction, citing *United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). The court found that "the landlady had obtained a lawful order of eviction following lawful notice to the tenant" and it agreed with the Government's view that the search had been conducted "pursuant to a valid consent, and that under the circumstances, the defendant [Braunig] had no reasonable expectation of privacy in the premises." *United States v. Paroutian,* 299 F.2d 486, 488 (2d Cir. 1962); *United States v. Parizo,* 514 F.2d 52 (2d Cir. 1975); and *United States v. Croft,* 429 F.2d 884, 887 (10th Cir. 1970), were cited in support by the district court. Appellant's argument that she had a "higher reasonable expectation of privacy in the items in question since they were not contraband, but rather personal letters, documents, and a diary," was also rejected by the district court on the ground that "there is no special sanctity in personal papers such as to render them immune from search and seizure. *See Anderson [Andresen] v. Maryland* [427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627], 44 U.S.L.W. 5125 (U.S. June 29, 1976)."

In challenging the District Court's ruling on this appeal, appellant claims that, while the landlady technically complied with New York's RPAPL § 735, the method of giving notice by affixing a copy of the summons to a conspicuous part of the premises and thereafter mailing a copy to the same address, it was constitutionally deficient under the Fourteenth . Amendment as not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94

ployed at the property sought to be recovered, a copy of the notice of petition and petition, if upon reasonable application admittance can be obtained and such person found who will receive it; or if admittance cannot be obtained and such person found, by affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered; and in addition, within one day after such delivering to such suitable person or such affixing, by mailing to the respondent by registered or certified mail,

(a) if a natural person, as follows: at the property sought to be recovered, and if such property is not the place of residence of such person and if the petitioner shall have written information of the residence address of such person, at the last residence address as to which the petitioner has such information,

or if the petitioner shall have no such information, but shall have written information of the place of business or employment of such person, to the last business or employment address as to which the petitioner has such information; and . . .

\* \* \* \* \* \*

(2). The notice of petition, or order to show cause, and petition together with proof of service thereof shall be filed with the court or clerk thereof within three days after;

(a) personal delivery to respondent, when service has been made by that means, and such service shall be complete immediately upon such personal delivery; or

(b) mailing to respondent, when service is made by the alternatives above provided, and such service shall be complete upon the filing of proof of service."

L.Ed. 865 (1950). Decisions following *Mullane, supra,* including *Covey v. Town of Somers,* 351 U.S. 141, 146, 76 S.Ct. 724, 100 L.Ed. 1021 (1956), and, more recently, *Robinson v. Hanrahan,* 409 U.S. 38, 39–40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), make clear that where a State or municipality knows that the person's condition or location is such that he will not be adequately apprised of the proceeding in question through the statutory method of notice used, the due process clause will not have been complied with. In the present case the appellant claims that Special Agent Myers knew of Braunig's incarceration in Canada and presumably had told the landlady of appellant's absence from New York. Again, presumably, the landlady had not complied with *Mullane* and *Robinson, supra,* therefore, by using a "legal" form of notice knowing full well that Braunig would never see or hear of it.

■ The Government attempts to distinguish *Robinson v. Hanrahan, supra,* and argues that Braunig was extended constitutionally sufficient notice of eviction, and also argues that the point has been waived. We agree that the issue has been waived.

The district court heard oral argument on the motion on August 12, 1976. An independent review of the transcript of that day's proceedings reveals the defense's oral contentions were that the Government could and should have secured a search warrant for the premises and that Braunig retained an expectation of privacy despite the eviction. In connection with the continuing expectation of privacy argument, counsel pointed out that the landlord-tenant relationship between the landlady, Flanagan, and Braunig created a "more permanent kind of relationship," which in turn related to the expectation of privacy and that the landlady's action is allowing the search exposed her to a civil action for conversion and a criminal one for larceny. Counsel also stated:

"I won't question for the purpose of the argument that there was valid notice of eviction. May I say that the landlord and the Government knew where my client

was, in a jail in Montreal, and that it was not mailed to her at that point."

This last reference to the landlady's knowledge of Braunig's actual whereabouts at the time of the eviction is the only remark at the August 12 hearing dealing with the point now pressed so urgently on appeal. Significantly, the preceding sentence of the above-quoted statement abandons the notice issue at the outset.

■ Rule 12(f) F.R.Crim.Pro. makes clear that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, *United States v. Schwartz,* 535 F.2d 160, 163 (2d Cir. 1976), and where that party has had ample opportunity to make the point in the trial court in a timely manner, *United States v. Rollins,* 522 F.2d 160, 165 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 325 (1976), waiver will bar raising the issue on appeal.

Appellant's assertion that it was "at all times . . . a factual predicate on the consent search issue that neither Braunig nor Gardner received actual notice of the eviction," ignores the point that whether appellant ever saw the particular notice of eviction affixed to her front door, is not the issue before this court. By abandoning the contention that the landlady failed to give valid notice of eviction and thus eliminating the necessity for an evidentiary hearing, the only remaining issue is whether the method of notice used complies with constitutional standards. The notice provisions of § 735 of RPAPL, invoked here by the landlady, were held by this court in *Velazquez v. Thompson,* 451 F.2d 202, 204–5 (2d Cir. 1971), adequately to fulfill the requirements of the federal constitution and that case answers the question here.

Moreover, a review of the record reveals that appellant's claim that the landlady knew where she was at the relevant time is

unsupported by competent evidence. It rests solely and entirely upon an uncorroborated and unsupported representation by defendant-appellant's counsel to the court at the suppression hearing. The argument by counsel for the appellant on appeal that the fact that there were several communications between Special Agent Myers and the landlady warrants the inference that Myers told the landlady that Braunig was incarcerated in Canada must be rejected as unreasonable.

Appellant also argues that the district court erred in admitting "similar act" evidence[2] against her on the ground that the Government failed to show a sufficient connection between her and the similar acts. The similar acts were the forgeries and false certification of two checks, drawn on the Bank of Albany and cashed by one Ralph Waldo Flanders with the aid of Michael S. Gardner, who shared in the proceeds. A false Bank of Albany certification stamp and a blank Bank of Albany check belonging to one Eric Thomas, the account on which the two forged checks had previously been drawn, were seized by the F.B.I. during the search of Braunig's apartment. The appellant, citing *United States v. Vosper,* 493 F.2d 433 (5th Cir. 1974), argued here and below that the Bank of Albany scheme was exclusively Gardner's, that Braunig had nothing to do with it, and that the court erred in admitting the evidence "on the theory that the jury could reject it if there was no connection." In *Vosper, supra,* a bank robbery prosecution, the Government offered "similar act" evidence which placed the defendant near the scene of a prior robbery. Recognizing the trial court's "wide discretion," in admitting such evidence, the Fifth Circuit nonetheless ruled that it was error to have admitted the evidence because

> "[T]here is little, save his presence . ., to show that he had any responsibility for

or participation in the Pensacola incident [the allegedly 'similar act'] and the dangers of prejudice from this line of questioning outweighed the value of the admission of such evidence." 493 F.2d at 437. (Footnote omitted.)

■ Appellant's reliance on *Vosper,* however, is misplaced in light of the facts presented here. Prior to trial, the court heard arguments on the similar act evidence and found that the appellant and Gardner didn't just share the apartment jointly but that Braunig had served as Gardner's secretary over a period of years. The court, therefore, concluded, ". . . a reasonable person could be expected to wonder what a bank certification stamp was doing in one's household." The Government was then allowed to tell the jury in its opening statement that it expected to present evidence of prior similar acts, "subject to the rulings to be made by the Court." The evidence was not offered to prove the criminal character or disposition of the defendant and was not of such a prejudicial nature as to outweigh its probative value. The court included appropriate limiting instructions in its charge to the jury, and it did not abuse its discretion in admitting the evidence. *United States v. Magnano,* 543 F.2d 431 (2d Cir. 1976); *United States v. Grady,* 544 F.2d 598 (2d Cir. 1976).

■ Appellant's reliance on *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), for the argument that the mail fraud counts in the indictment should have been dismissed as not within the purview of the statute, 18 U.S.C. § 1341, is misplaced. Whereas in *Maze,* the Court ruled that the mail fraud statute had not been violated because the scheme in question had "reached fruition" prior to the mailings, 414 U.S. at 402, 94 S.Ct. 645, in the present case, the use of the mails af-

**2.** Admissible pursuant to Rule 404(b), Fed.R. Evid., which provides:

"(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

forded appellant vital time to execute the fraud and was an integral part of the scheme. The frauds were carried out by Braunig's presentation of forged Canadian checks to Barclay's Bank of New York for deposit in her name. Thereafter, taking advantage of Barclay's practice of crediting international checks to depositors' accounts before receiving confirmation from the drawee bank that the checks were valid, Braunig withdrew the funds from the account during the time the checks were in the international mails bound for Canada for collection and before Barclay's could be warned by the Canadian drawee bank that the checks were forged. The district court, therefore, properly denied Braunig's motion to dismiss the mail fraud counts. *United States v. Marando,* 504 F.2d 126 (2d Cir.), *cert. denied sub nom. Berardelli v. United States,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974); *United States v. Cohen,* 518 F.2d 727 (2d Cir.), *cert. denied sub nom. Duboff v. United States,* 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975); *United States v. Greenberg,* 534 F.2d 523 (2d Cir. 1976).

We do not find appellant's other contentions to be meritorious and, therefore, no further discussion is warranted.

The judgments of conviction are affirmed.