628 F.2d 758
 6 Fed. R. Evid. Serv. 661
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mohinder SINGH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shamsher WADUD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
BENGAL CABARET, INC., d/b/a Nirvana Restaurant, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
BANGLADESH HOUSE, INC., d/b/a Nirvana Boutique, Defendant-Appellant.
 Nos. 1013, 1014, 1015, 1016, Dockets 79-1439, 79-1440,
79-1484, 79-1485.
 United States Court of Appeals,
Second Circuit.
 Argued April 17, 1980.
Decided June 12, 1980.
 
 1
 Roy R. Kulscar, New York City (Backal, Kulscar, Labush & Lamendola) New York City, for appellant Singh.
 
 
 2
 Gerald M. Labush, New York City (Backal, Kulscar, Labush & Lamendola), New York City, for appellants Wadud, Bengal Cabaret, Inc., and Bangladesh House, Inc.
 
 
 3
 Robert S. Groban, Jr., Sp. Asst. U. S. Atty., New York City (Pamela Rogers Chepiga, Mary Jo White, Asst. U. S. Attys., New York City, of counsel), for appellee.
 
 
 4
 Before MULLIGAN, Circuit Judge, SPEARS,* and SWEET,** District Judges.
 
 SPEARS, District Judge:
 
 5
 This is an appeal by defendants Mohinder Singh, Shamsher Wadud, Bengal Cabaret, Inc. (d/b/a The Nirvana Restaurant), and Bangladesh House, Inc. (d/b/a The Nirvana Boutique) from a judgment of conviction entered in the United States District Court for the Southern District of New York.
 
 
 6
 The indictment, in seven counts, charged Mohinder Singh, Wadud, and other individuals, as well as the two corporate defendants, each wholly owned by appellant Wadud, with developing and maintaining a sophisticated, broad-based scheme to exploit illegal aliens by manipulating the United States immigration laws. Count One charged Wadud, the two corporations, Mohinder Singh, and Huq Rabiul Mani Sheikh with conspiring to harbor illegal aliens and to violate federal law by making false statements on various immigration forms and receiving money, services, and other unauthorized benefits from aliens in violation of 18 U.S.C. §§ 1001, 1015, 1422, 1546, and 8 U.S.C. § 1324. Count Two charged Wadud and Bangladesh House with making false statements in connection with an "Application for Status as Permanent Resident" filed with the Immigration and Naturalization Service ("INS") by Prema Kumari Muddan in violation of 18 U.S.C. §§ 1001 and 1002. Count Three charged that Mohinder Singh, Wadud, and Bengal Cabaret aided and abetted Sarbjit Singh in obtaining an immigrant visa through fraud in violation of 18 U.S.C. §§ 1542 and 1546. Counts Four and Five charged Wadud and Bangladesh House with aiding and abetting Shyam Sunder and Jagtar Singh Sehgal in making false statements to INS in connection with their "Applications for Status as Permanent Residents" in violation of 18 U.S.C. §§ 1001 and 1002. Count Six charged that Wadud and Bengal Cabaret aided and abetted Ahsan Ullah in obtaining an immigrant visa through fraud in violation of 18 U.S.C. §§ 1542 and 1546. Count Seven charged that Wadud and Bengal Cabaret aided and abetted Huq Rabiul Mani Sheikh in making false statements to the United States Department of Labor in connection with Sheikh's "Application for Alien Employment Certification" in violation of 18 U.S.C. §§ 1001 and 1002.
 
 
 7
 The jury returned guilty verdicts against each of the appellants on all counts of the indictment in which they were named. Ahsan Ullah was acquitted; the case against Sarbjit Singh was severed during trial with the Government's consent. The remaining defendants were not present for trial, and were believed to have returned to their homelands.Testimony of Civil Suit Against Defendant
 
 
 8
 As the first point of error, Wadud and the corporate defendants assert that the district court erred when it allowed the Government to elicit from Miron, one of the prosecution's twenty-four witnesses, that he had brought a civil suit for non-payment of wages which had resulted in an unpaid money judgment against Wadud. The appellants argue that the admission of this testimony destroyed the basic presumption of innocence on the part of the defendant, as set forth in Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). They argue that the effect of the introduction of this evidence, with no immediate curative instruction from the court, was that the jury was left with the impression that what Miron said was more worthy of belief because another court had found Miron worthy of belief. The appellants further argue that the introduction of this evidence was in violation of Rule 404(b) of the Federal Rules of Evidence, which states,
 
 
 9
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 10
 Since the judgment in the state civil suit remained unpaid, Miron had a strong motive to testify in a manner consistent with his testimony in the civil suit. In addition, the mere fact that such a suit had been instituted with the resulting judgment yet unpaid reflected the possibility that Miron bore considerable enmity toward Wadud.
 
 
 11
 While it is universally accepted that the "enforcement (of the presumption of innocence) lies at the foundation of the administration of our criminal law," Coffin v. United States, supra, it should not be implied that the admission of evidence of the bias and self-interest of a witness would destroy the presumption. If anything, the admission here would serve to impeach the credibility of the witness rather than make his testimony more believable. This court has long held that, although credibility generally may not be supported until it has first been attacked, an exception exists which allows the Government to bring out on direct examination the circumstances surrounding a witness's motivation for cooperating with the Government or other matters damaging to the witness's credibility. United States v. Blackwood, 456 F.2d 526, 529 (2d Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); United States v. Del Purgatorio, 411 F.2d 84, 87 (2d Cir. 1969); United States v. Rothman, 463 F.2d 488, 489-90 (2d Cir.), cert. denied, 409 U.S. 956, 93 S.Ct. 291, 34 L.Ed.2d 231 (1972); United States v. Di Francesco, 604 F.2d 769, 775 (2d Cir.), pet. for cert. granted on other grounds, 444 U.S. 1070, 100 S.Ct. 1012, 62 L.Ed.2d 751 (1980). Admission of this evidence is permitted in order to avoid an inference by the jury that the Government is attempting to keep from the jury the witness's possible bias.
 
 
 12
 Furthermore, proper curative instructions were given by the district judge in order to prevent any possibility that the jury might consider the evidence concerning the civil suit on some issue other than Miron's motive in testifying. Although the appellants now complain that the district judge erred in not giving the instructions immediately after the testimony of Miron, the record reflects that they did not seek such an instruction at that time. The point has clearly been waived. See United States v. Rothman, supra, in which this court held that the complete absence of cautionary instructions was not such plain error by the trial judge as to require reversal of the convictions. In the present case, proper instructions were given along with the court's charge to the jury. There is no error on appellants' first point of error.
 
 
 13
 Evidence of "Other Crimes" and "Bad Acts"
 
 
 14
 As the second point of error, the two corporate appellants and appellant Wadud contend that the testimony of several witnesses regarding the nonpayment of wages by the defendant and the conditions of their employment constituted inadmissible character evidence of "other crimes" or "bad acts" of Wadud in violation of Rule 404(b) of the Federal Rules of Evidence. Numerous witnesses other than Miron testified concerning the nonpayment of wages to the employees of the Nirvana Restaurant.
 
 
 15
 T. M. Nazrul Inslam testified that he worked six or seven days a week from 4:00 p. m. until 1:00 to 4:00 a. m. and that he was paid no salary for his labor, but was allowed to take the tips home. This testimony proceeded with absolutely no objection on behalf of the defendants, although opportunity for objection was obviously present since counsel objected to other portions of the witness's testimony on various grounds, generally as to the form of the questions. At no point did the defense argue that the testimony being admitted constituted evidence of "bad acts" or "other crimes" in violation of Rule 404(b) of the Federal Rules of Evidence.
 
 
 16
 A.K.M. Omour Faroque Khan testified that he worked at the Nirvana Restaurant from July, 1973, until July, 1974. He stated that he worked from 5:00 in the afternoon until 1:00 or 2:00 a. m., but received no salary. Once again, no objection was lodged with the court concerning the evidence elicited from the witness, although there were objections made throughout this testimony regarding the form of the questions.
 
 
 17
 Mahboobur Rahman Khan testified that when he was hired by appellant Wadud, he was told that when he had learned the job of waiter, he would be paid the same amount the other waiters received. Although he worked for Wadud from August or September, 1974, until April, 1975, and again from October, 1975, until February, 1977, he testified that he never received any pay. Again, the only objection lodged was to the form of the question. No objection was made to the admission of evidence regarding the nonpayment of wages.
 
 
 18
 Nur Ahmed testified that he worked at the restaurant for approximately five months, and that he worked approximately sixteen hours a day, but was never paid. This testimony was admitted without any objection of any kind.
 
 
 19
 Nazmul Ahsan Khan testified that his shift at the restaurant began at 4:00 in the afternoon and lasted until there were no customers left in the restaurant, but that in nine months' time, he received no salary. Although there was a general objection to this line of testimony as being irrelevant, there was no objection on the ground that the testimony constituted "bad acts" or "other crimes" within the meaning of Rule 404(b), Fed.R.Evid.
 
 
 20
 Rule 12(f) of the Federal Rules of Criminal Procedure clearly states that "(f)ailure by a party to raise . . . objections . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." This court has strongly held in United States v. Braunig, 553 F.2d 777, 780 (2d Cir.), cert. denied, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 277 (1977), that
 
 
 21
 where a party has shifted his position on appeal and advances arguments available but not pressed below, United States v. Schwartz, 535 F.2d 160, 163 (2d Cir. 1976), and where that party has had ample opportunity to make the point in the trial court in a timely manner, United States v. Rollins, 522 F.2d 160, 165 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976), waiver will bar raising the issue on appeal.
 
 
 22
 See also United States v. Viserto, 596 F.2d 531, 537 (2d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); United States v. Fuentes, 563 F.2d 527, 531 (2d Cir.), cert. denied, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); and United States v. Chiarizio, 525 F.2d 289, 293 (2d Cir. 1975).
 
 
 23
 But even if timely objections had been made to questions regarding the nonpayment of wages, such evidence was clearly admissible to prove overt actions taken by the defendants in furtherance of one of the objects of the conspiracy to harbor illegal aliens in Count One of the indictment. The statute alleged to have been violated, 8 U.S.C. § 1324, contains a proviso, "that for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." Evidence of extended periods of employment without the receipt of salary was certainly relevant to the issue of whether the employment of these aliens was the usual and normal practice incident to employment.
 
 The Curtailment of Cross-Examination
 
 24
 Appellant Wadud and the two corporate appellants next contend that the court committed reversible error in curtailing their cross-examination of the prosecution's witness.
 
 
 25
 A trial court is allowed wide discretion in the management of the cross-examination of witnesses. "(I)n the last analysis the trial court is the governor of the trial with the duty to assure its proper conduct and the limits of cross-examination necessarily lie within its discretion. And we should not overrule the exercise of that discretion unless we are convinced that the ruling of the court was prejudicial." Foster v. United States, 282 F.2d 222, 224 (10th Cir. 1960), quoted with approval in United States v. Blackwood, 456 F.2d 526 (2d Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). See also United States v. Cambindo Valencia, 609 F.2d 603, 630 (2d Cir. 1979); United States v. Girard, 601 F.2d 69, 73 (2d Cir.), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); United States v. Glover, 588 F.2d 876, 878 (2d Cir. 1978); United States v. Corr, 543 F.2d 1042, 1051 (2d Cir. 1976); United States v. Green, 523 F.2d 229, 237 (2d Cir. 1975), cert. denied, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); United States v. Jenkins, 510 F.2d 495, 500 (2d Cir. 1975).
 
 
 26
 In determining whether a trial judge has abused his discretion in the curtailment of cross-examination of government witnesses, the test is whether the jury was already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government. United States v. James, 609 F.2d 36, 47 (2d Cir. 1979), cert. denied, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); United States v. Turcotte, 515 F.2d 145, 151 (2d Cir.), cert. denied, 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975); and United States v. Miles, 480 F.2d 1215, 1217 (2d Cir. 1973) (per curiam). Each of the situations in which the erroneous curtailment is alleged to have occurred must be examined in the light of this test.
 
 
 27
 The first of these instances occurred during the cross-examination of I.T.M. Nazrul Inslam. Inslam testified that he had worked as a waiter at the Nirvana Restaurant and had not been paid; that he had observed the co-defendant Mohinder Singh sleep in the restaurant; and that he had never seen the defendant Sarbjit Singh work there. Appellant Wadud and the two corporate appellants contend that the cross-examination of Inslam was improperly curtailed when the court sustained the objection of the Government to the question, "When you were taken into custody, how long did you remain in custody?"
 
 
 28
 The defense had been allowed a wide latitude in its cross-examination of this witness. It was established that Inslam was living with his friend Mahboobur Rahman Khan ("Mizon"); that Inslam had overstayed his visa; that he was "illegal;" and that deportation proceedings were pending against him. In addition, the INS file of the witness was introduced as a defense exhibit; it classified the witness as a deportable alien who was considered a favorable government witness in this criminal case against Shamsher Wadud. Inslam's illegal status and motive to testify for the Government were amply placed before the jury. The jury had been presented with "sufficient information to make a discriminating appraisal of the witness' possible motives for testifying falsely in favor of the government." United States v. James, supra, 609 F.2d 36, 47. The court committed no error in sustaining the objection of the prosecution to the question propounded.
 
 
 29
 Mahboobur Rahman Khan ("Mizon"), who testified that he had worked at the Nirvana Restaurant without pay, also testified on cross-examination that he and Inslam were friends and had worked together at the restaurant. Inslam had previously testified that they lived together. The defense introduced his alien file, which contained his most recent address and which established that Mizon was an illegal alien subject to deportation. The defense was also allowed to elicit from Mizon that he had an agreement with the Government that he would not be criminally prosecuted for being an illegal alien. The appellants complain that error was committed when the court refused to allow the defense to ask Mizon if he had traveled to and from Bangladesh with Nazrul Inslam. The trial court certainly did not abuse its discretion in refusing to allow the defense to delve into the private lives of the witnesses after it had amply demonstrated the witness' possible bias and motive to testify on behalf of the Government. The name of the person with whom he was living and the name of the person with whom he had traveled from Bangladesh clearly were collateral matters with little, if any, probative value. It was well within the trial judge's discretion to terminate the inquiry. In addition, Inslam had previously testified before the jury that he lived with Mizon, so that the information which the defense says it was unable to elicit was actually placed before the jury.
 
 
 30
 The reliance of the appellants upon Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) is misplaced. That case states that eliciting the name and address of the witness is essential to cross-examination, and is the very starting point of effective cross-examination. Id. at 131, 88 S.Ct. at 749. This court notes that the appellants, rather than complaining that they were unable to elicit the name and address of the witness, complain that they were not allowed to show with whom the witness lived and traveled, a far different situation from that in Smith v. Illinois, supra.
 
 
 31
 Nur Ahmed testified as to the terms and conditions of his employment at the Nirvana Restaurant. Unlike the two previous witnesses discussed above, Nur Ahmed had become a citizen, but there was, in his alien file and naturalization documents which had been turned over to the defense, an unsubstantiated notation of a hearsay allegation that Ahmed had entered into a sham marriage. On cross-examination, defense counsel attempted to impeach Ahmed's credibility with this hearsay allegation of marriage fraud, but the court refused to allow this inquiry. Certainly the trial judge did not abuse his discretion here; indeed, he went well beyond the requirements of Rule 608(b) of the Federal Rules of Evidence which provides:
 
 
 32
 Specific instances of the conduct of a witness, for the purposes of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . . (emphasis added).
 
 
 33
 Rule 608(b) clearly permits the trial court to exclude completely specific instances of a witness's prior conduct.
 
 
 34
 While it is possible that an inquiry into whether the individual submitted fraudulent documents to the INS may have, indeed, been probative of the propensity of the witness for truthfulness, the trial judge, as stated in Foster v. United States, supra, must set the limits of cross-examination. Here, again, the jury was given sufficient information with which to judge the credibility of the witness. The witness had contradicted himself in his testimony concerning the time when he first arrived in New York, and the defense was able to place before the jury the fact that the witness failed to report two years' employment at the Nirvana Restaurant while in this country as a student in his applications to the INS.
 
 
 35
 The defense next asserts that its cross-examination was improperly curtailed during the cross-examination of Franklin S. Abrams, an attorney specializing in immigration law who represented several of the aliens who worked at the Nirvana Restaurant. Prior to his being subpoenaed in this case, Abrams had been the subject of an investigation conducted by the INS. The government produced the Abrams files compiled by the INS, and requested that the district judge review them in camera, pursuant to 18 U.S.C. § 3500(c). Subsequently, the judge notified all counsel that nothing in the files constituted material which should be turned over to the defense, either under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Jencks Act, 18 U.S.C. § 3500(c). The appellants now contend that these files should have been turned over to them.
 
 
 36
 The trial court's ruling that the files contained neither Brady nor § 3500 material cannot be overturned on appeal absent a clear showing of abuse of discretion. United States v. Pacelli, 491 F.2d 1108, 1118 (2d Cir.), cert. denied, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974). This court has carefully examined the files, and concurs with the ruling of the judge of the district court. The matters contained within the files were completely unconnected with the matter at hand. Furthermore, the defense was allowed to place before the jury the fact that the witness had been the subject of investigations by the INS and U. S. Attorney's Office concerning the preparation of labor certifications unrelated to the present case. With this information, the jury was in possession of sufficient information to make a discriminating appraisal of the witness's possible motives for testifying falsely in favor of the Government. No error was committed by refusal of the court to allow examination to extend into the details of collateral matters not connected with the present case.
 
 
 37
 The final point of error raised by the defendants regarding alleged errors in the control of testimony by the trial court concerns the direct examination of Karim Chand. Dr. Nayamand Naik, a physician who treated Karim Chand, had testified that he had paid the defendant Wadud one thousand dollars to have Wadud sponsor his sister-in-law, Prema Kumari Muddan, as a bilingual secretary so that she would be allowed to remain in the country; he admitted that he had supplied false information on the immigration forms and that, in reality, she had come to the United States to serve as a house servant in his own home. Dr. Naik further testified that he had contacted one of his patients, Karim Chand, to help with Ms. Muddan's immigration. The defendants argue that they were not allowed to elicit from Chand testimony that at a meeting between Chand, Wadud, and Dr. Naik, Chand did not see Dr. Naik give Wadud the one thousand dollars. In actuality, upon a review of the transcript, the only objections sustained were those as to form. Furthermore, the allegedly precluded evidence was in fact in the record, and was argued to the jury by counsel for Wadud. The jury was in possession of the same information which the defense alleges it was not allowed to present; there was no error.
 
 
 38
 In summary, it becomes obvious that the court committed no error regarding the curtailment of cross-examination. In each instance, the jury had before it sufficient facts to weigh and determine the credibility of the witnesses. It would appear that the court properly exercised its discretion; certainly, it was not abused. See United States v. Blackwood, supra, and the cases cited following it.
 
 
 39
 Sufficiency of the Evidence Against Mohinder Singh
 
 
 40
 The final point of error raised is that of the codefendant Mohinder Singh, who contends that his guilt was not proven beyond a reasonable doubt, either as to the substantive act of aiding and abetting his brother Sarbjit Singh in the making of false statements in order to obtain an immigrant visa, or as to the conspiracy charged in Count One of the indictment.
 
 
 41
 In an examination of the evidence to determine whether sufficient proof was adduced for the jury to find beyond a reasonable doubt that a defendant is guilty of an offense, the evidence must be viewed in the light most favorable to the opposing party, crediting all available inferences in favor of the opposing party. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Callabrass, 607 F.2d 559, 560 (2d Cir. 1979); United States v. Sprayregen, 577 F.2d 173 (2d Cir.), cert. denied, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); United States v. Ruffin, 575 F.2d 346, 353 (2d Cir. 1978); United States v. Lamont, 565 F.2d 212, 216 (2d Cir. 1977), cert. denied, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978); United States v. Daley, 564 F.2d 645, 650 (2d Cir. 1977), cert. denied, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978). Furthermore, all issues of credibility must be considered questions solely within the jury's province. United States v. Sprayregen, supra, 577 F.2d at 174; United States v. Lamont, supra, 565 F.2d at 216; United States v. Taylor, 464 F.2d 240, 245 (2d Cir. 1972). When judged by these standards, the defendant's claim that the jury lacked sufficient evidence to determine his guilt as to either count beyond a reasonable doubt is clearly without merit.
 
 
 42
 As to Count Three, which charged Mohinder Singh with aiding and abetting the making of false statements in the visa application of his brother Sarbjit Singh, the evidence established that Mohinder Singh prepared the way for and assisted Sarbjit Singh in obtaining a labor certification as a specialty chef at the Restaurant. That labor certification as a specialty chef was completed, filed, and approved by the Labor Department while Sarbjit Singh was still in India. Mohinder Singh went to the offices of Franklin Abrams, the immigration lawyer, where he had the appropriate forms prepared for his brother and Wadud, when he knew that his brother was not a specialty chef. When the labor certification was approved, it was sent to India where Sarbjit Singh presented it to the American Consulate, and, based upon the fraudulent statements therein, Sarbjit Singh was issued an immigrant visa.
 
 
 43
 When Sarbjit Singh arrived in the United States, he did not work as a specialty chef, nor did he have any job at the Nirvana Restaurant, as represented to the Labor Department. Instead, Mohinder Singh approached Victor Khubani, and asked him to employ his brother Sarbjit as a doorman. Salary checks, bank records, and the testimony of several of Khubani's employees established that Sarbjit Singh was employed at the Tandoor, Khubani's restaurant, at hours which made it impossible for him to have been employed at the same time as a specialty chef at the Restaurant.
 
 
 44
 Accordingly, the evidence as to the substantive count was certainly sufficient to prove that Mohinder Singh had knowingly and wilfully aided and abetted the making of false statements in Sarbjit Singh's visa application. Needless to say, this same evidence of the substantive count is admissible and relevant as evidence of an overt act in furtherance of the conspiracy.
 
 
 45
 Evidence was offered to prove that Mohinder Singh had paid Wadud one thousand dollars for his own fraudulent certification as a specialty chef. Further evidence of Mohinder Singh's participation in the conspiracy was offered by the testimony of Bachan, the Restaurant's dishwasher, who was also sponsored by Wadud as a specialty chef. When testifying before the Grand Jury, Bachan stated that he had been introduced to Wadud by Mohinder Singh, but he changed his testimony at trial and was impeached by his prior Grand Jury testimony.
 
 
 46
 The jury was entitled to find that Mohinder Singh had played a central role in obtaining his own fraudulent "specialty chef" labor certification through the Restaurant, as well as that of his brother and Bachan. Evidence was presented that Mohinder Singh visited Franklin Abrams about once a month in connection with labor certifications being funneled through Wadud's various corporations. Because of his presence at the Restaurant, he could clearly see that the people to whom the labor certifications were issued as specialty chefs were actually employed as waiters, doormen, or dishwashers. Thus, the evidence is more than sufficient for the jury to find that Mohinder Singh knowingly and wilfully joined the conspiracy, was aware of its objects, and promoted its goals. United States v. Callabrass, supra, 607 F.2d at 560; United States v. Sprayregen, supra, 577 F.2d at 173; United States v. Ruffin, supra, 575 F.2d at 353.
 
 
 47
 Mohinder Singh next contends that he was convicted by "prejudicial spillover" because of the vast amount of evidence presented against Wadud, and that he was convicted "not on the basis of the evidence relating to (him), but by imputing to (him) guilt based on the activities of the other . . . conspirators." United States v. Toliver, 541 F.2d 958, 962-63 (2d Cir. 1976). In light of the preceding discussion of the sufficiency of the evidence against Mohinder Singh, this argument is without merit as is his unsupported assertion, raised for the first time on appeal, that the proof showed multiple conspiracies and that a single-multiple conspiracy charge was not given.
 
 
 48
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 Honorable Adrian A. Spears, District Judge for the Western District of Texas, sitting by designation
 
 
 **
 Honorable Robert W. Sweet, District Judge for the Southern District of New York, sitting by designation